JILL C. DAVIS, ESQ.
Nevada Bar No.: 8418
MICHAEL R. JOE, ESQ.
Nevada Bar No.: 10626
**LEGAL AID CENTER OF**
**SOUTHERN NEVADA, INC.**
800 South Eighth Street
Las Vegas, Nevada 89101
Telephone: (702) 386-1070 x 176
Facsimile: (702) 388-1642
jdavis@lacsn.org

### UNITED STATES DISTRICT COURT

### DISTRICT OF NEVADA

| | |
|---|---|
| MARIA TREJO DE ZAMORA and, ISELA GOMEZ-DEHINES<br><br>                    Plaintiff,<br><br>vs.<br><br>AUTO GALLERY, INC.<br><br>                    Defendant(s). | Case No.:<br>Dept. No: |

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, MARIA TREJO DE ZAMORA and ISELA GOMEZ-DEHINES, by and through their counsel, JILL C. DAVIS, Esq. of the Legal Aid Center of Southern Nevada, Inc., for their Complaint against Defendant, AUTO GALLERY, INC., allege and state as follows:

### I. INTRODUCTION

1.      This Complaint arises out of the sale on credit of a 2004 Nissan Xterra, (VIN 5N1ED28T44C66010) from Defendant, AUTO GALLERY, INC., to Plaintiffs, MARIA TREJO DE ZAMORA and ISELA GOMEZ-DEHINES, on August 17, 2011. During the course of the August 17, 2011 transaction and thereafter, Defendant violated numerous state and federal statutes, engaged in fraudulent misrepresentation and converted Plaintiffs' personal property.

## II. JURISDICTION AND VENUE

2.    Jurisdiction arises under the laws of the United States, 15 U.S.C. § 1601, *et seq.*, and 28 U.S.C. §§ 1331 and 1337. The court has supplemental jurisdiction of the state law causes of action pursuant to 28 U.S.C. § 1367. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) in that the claims arose in, and the Defendant has conducted business in, this district. Plaintiffs seek actual damages, statutory damages, consequential damages, non-economic damages, equitable relief, punitive damages, plus attorney's fees, prejudgment interest, and costs based on Defendant's violations of law.

## III. PARTIES

3.    Plaintiff, MARIA TREJO DE ZAMORA , is a natural person who at all times relevant to this Complaint resided in the State of Nevada, County of Clark.

4.    Plaintiff, ISELA GOMEZ-DEHINES, is a natural person who at all times relevant to this Complaint resided in the State of Nevada, County of Clark.

5.    Defendant, AUTO GALLERY, INC., is a corporation organized and existing under and by virtue of the laws of the State of Nevada, and may be served with process by service upon its resident agent Pejman Zahedi, 6155 W. Sahara Avenue, Unit 284, Las Vegas, NV 89146.

6.    All of the acts or failures to act alleged herein were duly performed by and are attributable to Defendant, AUTO GALLERY, INC., acting by and through its agents and employees. Said acts and failures to act were within the scope of said agency and/or employment, and Defendant ratified said acts and omissions.

## IV. FACTUAL ALLEGATIONS

7.    On or about August 17, 2011, Plaintiffs, MARIA TREJO DE ZAMORA and ISELA GOMEZ-DEHINES (hereinafter, "Plaintiffs") became interested in purchasing a used

vehicle on credit.

8.    On August 17, 2011, Plaintiffs traveled to Defendant, AUTO GALLERY, INC., (hereinafter, "Defendant"), used car lot and saw a 2004 Nissan Xterra, (VIN 5N1ED28T44C66010) (hereinafter, "the vehicle").

9.    Plaintiffs spoke to a sales person in Spanish and were presented with a retail installment sales contract in English.

10.    Plaintiffs have limited ability to understand, speak or read English.

11.    Plaintiffs asked for the contract in Spanish but were not provided a retail installment sales contract Spanish.

12.    The retail installment sales contract lists the vehicle's sale price as $7,198.00, sales tax of $582.30 for a total of $7,771.30 and a finance charge of $3,000.00 for a total price of $10,771.30.

13.    The contract states that there will be 15 monthly payments of $718.20 beginning on September 1, 2011.

14.    The contract does not disclose the annual percentage rate, which is 52.662%.

15.    The Plaintiffs detrimentally relied upon Defendants' failure to disclose the annual percentage rate of 52.662%, as this exceeds the standard used car dealership interest of 29.95% for a client with very poor credit, and Plaintiffs would not have purchased the vehicle if the annual percentage rate had been disclosed on the face of the contract.

16.    The contract was not offered in Spanish to the Spanish speaking Plaintiff.

17.    The contract omits material information in that the contract is not in the form and content required by NRS 97.299 and NAC 97.110 but rather is a BBI Autoform contract.

18.    On September 9, 2011 Plaintiffs made and Defendants accepted a late payment of $1000.00 eight days late as evidenced by Receipt No. 163282, which indicates an outstanding

balance of $9,771.30.

19.    On October 17, 2012 Plaintiffs made and Defendants accepted a late payment of $1,000.00 seventeen days late as evidenced by Receipt No. 163292, which indicates the outstanding balance of $8,771.30.

20.    On November 18, 2011 Plaintiffs made and Defendants accepted a late payment of $1,000.00 seventeen days late as evidenced by Receipt No. 163302, which indicates the outstanding balance of $7,771.30.

21.    On January 18, 2012 Plaintiffs made and Defendants accepted a late payment of $500.00 seventeen days late as evidenced by receipt No. 163316.

22.    On February 15, 2012 Plaintiffs made and Defendants accepted a late payment of $4,200 fourteen days late as evidenced by receipt No. 163332, upon which this receipt reflects Auto Gallery's agreement to reduce the overall purchase price by $1,500.00, indicating a balance due of $1,571.30.

23.    On April 4, 2012 Plaintiffs made and Defendants accepted a late payment of $500.00 four days late.

24.    Plaintiffs attempted to pay $600 in May 2012 however the Auto Gallery refused the payment, and demanded Plaintiff sign a new contract stating she owed $2,500.00.

25.    Plaintiffs refused to negotiate the terms of the initial contract and would not sign the new contract for $2,500.00, and went to Legal Aid Center of Southern Nevada.

26.    The vehicle was wrongfully repossessed by Defendant on July 5, 2012.

27.    Plaintiffs were not in default when the vehicle was repossessed on July 5, 2012.

28.    By the terms of the August 17, 2011 contract, Plaintiffs were to have paid $7,898.88 with their July 2012 payment (718.08 x 11 months September through July).

29.    By July 2012, Plaintiffs paid $8,200 for the vehicle with their April 4, 2012

payment ($1,000 + $1,000 + $1,000 + $500 + $4,200 + $500 = $8,200).

30.    Plaintiffs were ahead with their payments, and not in default on July 5, 2012.

31.    Defendant consistently accepted late payments.

32.    Defendant is a "used vehicle dealer," as defined in NRS 482.133, because Defendant is a "vehicle dealer who is licensed in accordance with the provisions of [NRS Chapter 482] as a used vehicle dealer and who acquires used vehicles for resale."

33.    Pursuant to NRS 482.3255, the following are evidence of unfitness of a licensee: any fraud which includes, but is not limited to:  misrepresentation in any manner, whether intentional or grossly negligent, of a material fact [subsection 8(a)]; and an intentional failure to disclose a material fact [subsection 8(b)].

34.    As a result of Defendant's conduct, Plaintiffs have suffered actual damages of no less than $8,200, which is the sum paid under the August 17, 2011 Contract, consequential damages, punitive damages, and non-economic damages.

## V. **LEGAL THEORIES**

## **CLAIMS FOR RELIEF**

35.    The allegations contained in paragraphs 1 through 34 are repeated and realleged as though here fully set forth.

### 1. **Violations of the Truth in Lending Act (TILA)**

36.    The transaction of August 17, 2011, was a consumer credit transaction within the meaning of TILA, 15 U.S.C. § 1602 and Regulation Z, 12 C.F.R. § 226.2, because:

      i.    Defendant offered to extend credit to Plaintiff, who is a "consumer," as that term is defined in 12 C.F.R. § 226.2(a)(11).  12 C.F.R. § 226.1(c)(1)(i);

      ii.    Defendant "regularly" extends credit to consumers, as that term is defined in 12 C.F.R. § 226.2(17)(v).  12 C.F.R. § 226.1(c)(1)(ii);

      iii.    The credit is subject to a "finance charge," as that term is defined in 12

C.F.R. § 226.4(a), or is payable by a written agreement in more than four installments. 12 C.F.R. § 226.1(c)(1)(iii); and

    iv.    The credit is primarily for personal, family, or household purposes. 12 C.F.R. § 226.1(c)(1)(iv).

37.    Defendant, in the contract dated August 17, 2011, failed to disclose the APR in violation of TILA and Regulation Z. TILA and Regulation Z have been violated in the following respects, including, but not limited to:

    i.    The loan agreement fails to disclose the APR of 52.662% and include a brief description, such as "the cost of your credit as a yearly rate," in violation of 15 U.S.C. § 1638(a)(4) and Regulation Z, § 226.18(e);

    ii.    The loan agreement fails to disclose the "amount financed," using that term, and a brief description such as "the amount of credit provided to you or on your behalf," in violation of 15 U.S.C. § 1638(a)(2) and Regulation Z, § 226.18(b).

    iii.    The loan agreement fails to disclose the "finance charge," using that term, and a brief description such as "the dollar amount the credit will cost you," in violation of 15 U.S.C. § 1638(a)(3) and Regulation Z, § 226.18(d).

    iv.    The loan agreement fails to make the terms "finance charge" and "annual percentage rate" more conspicuous than any other disclosure, in violation of 15 U.S.C. § 1632(a) and Regulation Z, § 226.17(a)(2);

    v.    The loan agreement fails to provide a statement of the consumer's right to obtain, upon request, a written itemization of the amount financed, or fails to automatically disclose itemization of the amount financed, including amounts paid to other persons by the creditor on the consumer's behalf, with those persons identified, in violation of 15 U.S.C. § 1638(a)(2)(B) and Regulation Z, § 226.18(c); and

    vi.    The loan agreement fails to include a separate written itemization of the amount financed, including any amounts paid to other persons by the creditor on the consumer's behalf, specifically, public officials or government agencies, as required by Reg. Z, § 226.18(c)(1)(iii).

38.    As a result of these violations of the TILA, Defendant is liable for actual damages of no less than $8,200 pursuant to 15 U.S.C. § 1640(a)(1), which is the sum paid under the August 17, 2011 Contract.

39.    As a result of these violations of the TILA, Defendant is liable for statutory

damages in the amount of $1,000.00 (twice the finance charge ($3,000 x 2 = $6,000.00), not to exceed $1,000.00) plus attorney's fees and costs in accordance with 15 U.S.C. § 1640(a)(2)(a)(i) and 15 U.S.C. § 1640(a)(3), respectively.

40.    Plaintiffs are entitled to recover attorney's fees and costs under the terms of the contract used in the August 17, 2011 transaction, and the contract that *should* have been used in the August 17, 2011 transaction pursuant to NRS 97.299, NAC 97.110.

### 2. Violations of NRS Chapter 97, Retail Installment Sales of Goods and Services

41.    NRS 97.115 defines a "retail installment transaction" as a:

> . . . transaction in which a retail buyer purchases goods . . . from a retail seller pursuant to a retail installment contract . . . which *may* provide for a finance charge and under which the buyer agrees to pay the total of payments in one or more installments.

> (Emphasis added).

Because the August 17, 2011 Contract included a finance charge and was payable in one or more installments, the August 17, 2011 Contract was a "retail installment" transaction as defined in NRS 97.115.

42.    NRS 97.125(1)(c) defines a "retail seller" or "seller" as:

> A person, other than a financial institution, who regularly extends, whether in connection with sales or leases of goods or services, credit which is payable by agreement in more than four installments . . .

Under the August 17, 2011 Contract, Plaintiff was required to pay Defendant fifteen (15) installments of $718.08. Therefore, Defendant is a retail seller, as defined in NRS 97.125(1)(c).

43.    The provisions of NRS Chapter 97 are exclusive, and govern all retail installment transactions included in NRS Chapter 97. *See* NRS 97.285. Contracts for the sale of vehicles are included in NRS Chapter 97. *See* NRS 97.297 to 97.299, inclusive.

44.    The transaction of August 17, 2011, involved the taking of a security interest to

secure part of the purchase price of the vehicle; an application for credit was made through Defendant as the seller of the vehicle; Defendant is a "dealer" as defined by NRS 482.020, and; the sale was not a commercial transaction.

45.    Defendant violated NRS 97.299 by failing to use the form prescribed by the Commissioner of Financial Institutions (found in NAC 97.110) for contracts to be used in the sale of vehicles if the sale involves the taking of a security interest to secure all or part of the purchase price of the vehicle, the application for credit is made to or through the seller of the vehicle, the seller is a dealer, and the sale is not a commercial transaction.

46.    Defendant violated NRS 97.185(1)(e) by failing to include the aggregate amount of official fees in the written contract.

47.    Defendant violated NRS 97.299(2)(d) by failing to include in the written contract a description of the method for calculating the unearned portion of the finance charge upon prepayment in full of the unpaid total of payments as prescribed in NRS 97.255. The statement in the written contract, "Purchaser is entitled to a partial refund of the unearned finance computed on the rule of 78," is not sufficient to satisfy the requirements of NRS 97.299(2)(d) and NRS 97.255.

48.    As a result of these violations of Nevada law, Defendant is barred from the recovery of any finance charge, official fees, or any charge for delinquency or collection under or in connection with Plaintiff's written contract, pursuant to NRS 97.305.

49.    As a result of the foregoing violations of NRS Chapter 97, all Plaintiff owed Defendant under the August 17, 2011 Contract is the selling price of the vehicle $7,189, plus sales tax of $582.30 (8.1% sales tax on $7,189.00), or $7,771.30, thus pursuant to NRS 97.305 Plaintiff is entitled to damages of $8,200 (total paid) - $7,771.30 = $428.70.

50.    Plaintiffs are entitled to recover attorney's fees and costs under the terms of the

contract used in the August 17, 2011 transaction, and the contract that *should* have been used in the August 17, 2011 transaction pursuant to NRS 97.299, NAC 97.110.

**3. Violations of NRS Chapter 97, Retail Installment Sales of Goods and Services and NRS 482.3277  Dealers: Certain purchasers and prospective purchasers to be allowed to view certain documents in Spanish language**

51.    NRS 97.115 defines a "retail installment transaction" as a:

> . . . transaction in which a retail buyer purchases goods . . . from a retail seller pursuant to a retail installment contract . . . which *may* provide for a finance charge and under which the buyer agrees to pay the total of payments in one or more installments.

(Emphasis added).

Because the August 17, 2011 Contract included a finance charge and was payable in one or more installments, the August 17, 2011 Contract was a "retail installment" transaction as defined in NRS 97.115.

52.    NRS 97.125(1)(c) defines a "retail seller" or "seller" as:

> A person, other than a financial institution, who regularly extends, whether in connection with sales or leases of goods or services, credit which is payable by agreement in more than four installments . . .

Under the August 17, 2011 Contract, Plaintiff was required to pay Defendant fifteen (15) installments of $718.08.  Therefore, Defendant is a retail seller, as defined in NRS 97.125(1)(c).

53.    The provisions of NRS Chapter 97 are exclusive, and govern all retail installment transactions included in NRS Chapter 97.  *See*  NRS 97.285.  Contracts for the sale of vehicles are included in NRS Chapter 97.  *See* NRS 97.297 to 97.299, inclusive.

54.    The transaction of August 17, 2011, involved the taking of a security interest to secure part of the purchase price of the vehicle; an application for credit was made through Defendant as the seller of the vehicle; Defendant is a "dealer" as defined by NRS 482.020, and;

the sale was not a commercial transaction.

55.    Defendant violated NRS 482.3277 by failing to provide the retail installment sales contract in Spanish.

56.    Defendant conducted the sale in Spanish as the Plaintiffs are Spanish speaking.

57.    The Plaintiffs asked for the retail installment sales contract in Spanish.

58.    Defendants did not provide the retail installment sales contract in Spanish.

59.    As a result of the foregoing violations of NRS Chapter 97, all Plaintiff owed Defendant under the August 17, 2011 Contract is the selling price of the vehicle $7,189, plus sales tax of $582.30 (8.1% sales tax on $7,189.00), or $7,771.30, thus pursuant to NRS 97.305 Plaintiff is entitled to damages of $8,200 (total paid) - $7,771.30 = $428.70.

60.    Plaintiffs are entitled to recover attorney's fees and costs under the terms of the contract used in the August 17, 2011 transaction, and the contract that *should* have been used in the August 17, 2011 transaction pursuant to NRS 97.299, NAC 97.110.

### 3. Fraudulent Material Misrepresentation

61.    On August 17, 2011, Defendant made a false representation, through omission to Plaintiffs by failing to provide disclosures required under state and federal law.

62.    Defendant has is required by TILA to provide the Plaintiffs with the APR on the retail installment sales contract.

63.    Defendant as a dealer has the responsibility to provide TILA information, and specifically the APR of the retail installment sales contract.

64.    Defendant failed to disclose the true APR of 52.662% to the Plaintiffs.

65.    Defendant knew it was omitting the APR based upon the face of the contract, as no APR is listed.

66.    Defendant's misrepresentation of the APR on the August 17, 2011 Contract was

designed to induce Plaintiffs to act and/or refrain from acting, specifically, Defendant intended to induce Plaintiffs to enter into the August, 2011 Contract and to refrain from leaving Defendant's used car lot and taking their business elsewhere.

67.    Plaintiffs are unsophisticated consumers who justifiably relied upon Defendant's false representation through lack of disclosures.

68.    The Plaintiffs never would have purchased the vehicle if the true APR of 52.662% had been disclosed on the face of the contract, as is required by law.

69.    Plaintiffs sustained damages as a result of their reliance on Defendant's false representations through omission, specifically, but for Defendant's failure to disclose that the APR on the August 17, 2011 Contract was 52.662%, Plaintiff would not have entered into the August 17, 2011 Contract if they were aware of the 52,662% APR.

70.    To date, Plaintiff has suffered actual damages of no less than $8,200.00, which is the amount Plaintiffs have paid as a result of Defendant's fraudulent misrepresentation.

71.    In the alternative, as a result of Defendant's fraudulent misrepresentation, Plaintiff is entitled to equitable rescission of the August 17, 2011 Contract through a declaration that the contract is void and an injunction mandating that Defendant return Plaintiffs as closely as possible to the position they was in prior to entering into the August 17, 2011 Contract.

72.    As a result of Defendant's fraudulent misrepresentation, Plaintiff has suffered consequential damages in an amount to be determined at trial.

73.    Plaintiffs are entitled to recover attorney's fees and costs under the terms of the contract used in the August 17, 2011 transaction, and the contract that *should* have been used in the August 17, 2011 transaction pursuant to NRS 97.299, NAC 97.110.

///

//

### 4. Violations of the Federal Trade Commission's
### Used Motor Vehicle Trade Regulation Rule

74.     Defendant is a "dealer," as defined by 16 C.F.R. § 455.1(d)(3), because Defendant has sold or offered to sell 5 or more used vehicles in the last 12 months.

75.     Plaintiffs are "consumers," as defined by 16 C.F.R. § 455.1(d)(4), because they are not a used vehicle dealer.

76.     The 2004 Nissan Xterra,  (VIN 5N1ED28T44C66010) is a used vehicle because at the time it was sold to Plaintiff, it had been "driven more than the limited use necessary in moving or road testing a new vehicle prior to delivery to a consumer."  16 C.F.R. § 455.1(d)(2).

77.     Defendant did not place a "Buyer's Guide" on the used 1999 2004 Nissan Xterra, (VIN 5N1ED28T44C66010), before selling it to Plaintiffs, nor did Defendant incorporate by reference the "Buyer's Guide" into the August 17, 2011 retail installment sales contract, in violation of the Federal Trade Commission's Used Motor Vehicle Trade Regulation Rule (hereinafter, "FTC Used Car Rule").

78.     Defendant, in the transaction of August 17, 2011, and in the contract dated August 17, 2011, violated the FTC Used Car Rule in the following respects:

        i.     Defendant violated 16 C.F.R. 455.2(a) by failing to prepare, fill in as applicable and display a "Buyer's Guide" on the 2004 Nissan Xterra, (VIN 5N1ED28T44C66010)before selling the vehicle to Plaintiff.

        ii.     Defendant violated 16 C.F.R. 455.3(b) by failing to include in the August 17, 2011 retail installment sales contract the language, "The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract for sale."

79.     Plaintiffs are entitled to recover attorney's fees and costs under the terms of the contract used in the August 17, 2011 transaction, and the contract that *should* have been used in the August 17, 2011 transaction pursuant to NRS 97.299, NAC 97.110.

### 5.  Violations of NRS Chapter 598, Deceptive Trade Practices

80.     NRS 598.0923(2) states that a person engages in a "deceptive trade practice" if, he "fails to disclose a material fact in connection with the sale or lease of goods or services."

81.     On August 17, 2011 Defendant falsely represented that the APR on the August 17, 2011, by failing to disclose that the APR is 52.662% , thereby making a false representation through omission in violation of NRS 598.0915(15).

82.     NRS 598.0923(3) states that a person engages in a deceptive trade practice when he or she violates a state or federal statute or regulation relating to the sale or lease of goods or services.

83.     On July 22, 2011, as outlined above, Defendant violated the federal Truth in Lending Act, NRS Chapter 97, and the FTC Used Motor Vehicle Trade Regulation Rule, thereby violating state and federal statutes and regulations relating to the sale of goods in violation of NRS 598.0923(3).

84.     By violating NRS 598.0923(2) & (3), Defendant has engaged in "consumer fraud" as that term is defined by NRS 41.600(2)(e).

85.     Pursuant to NRS 41.600(3)(a), Plaintiffs are entitled to recover actual damages of no less than $8,200, which is the total cost paid under the contract, plus the cost of insuring the vehicle and any repairs, consequential and non-economic damages in an amount to be determined at trial; and punitive damages in an amount sufficient to punish Defendants and to deter others from like conduct.

86.     Plaintiffs are entitled to recover attorney's fees and costs under the terms of the contract used in the August 17, 2011 transaction, and the contract that *should* have been used in the August 17, 2011 transaction pursuant to NRS 97.299, NAC 97.110, and NRS 41.600(3)(c).

///

### 6.    Conversion of Personal Property

87.    On July 5, 2012 Plaintiffs were in full compliance with the terms of their August 17, 2011 contract, including current on their payments, in fact Plaintiffs were ahead on their contractual payment schedule on July 5, 2012.

88.    Plaintiffs were to have paid $7,898.88 with their July 2012 payment (718.08 x 11 months September through July), however they had already paid $8,200 on the contract at that date.

89.    Plaintiffs paid $8,200 in installment payments for the vehicle with their April 4, 2012 payment ($1,000 + $1,000 + $1,000 + $500 + $4,200 + $500 = $8,200).

90.    Plaintiffs were ahead of their contractual payment schedule, and not in default on July 5, 2012 when the vehicle was repossessed.

91.    The repossession on July 5, 2012 was unlawful as the Plaintiffs were not behind in their payments but rather were ahead of their payment schedule.

92.    On July 5, 2013, by repossessing Plaintiffs' vehicle Defendant committed a distinct act of dominion wrongfully exerted over Plaintiffs' personal property, i.e. 2004 Nissan Xterra, (VIN 5N1ED28T44C66010), in denial of, or inconsistent with Plaintiffs' title or rights therein, and Defendants acts were in derogation, exclusion, or defiance of Plaintiffs' title or rights in the personal property.

93.    As a result of Defendant's conversion of Plaintiffs' personal property, Plaintiffs have suffered actual damages in an amount to be determined at trial, and punitive damages in an amount sufficient to punish Defendants and to deter others from like conduct.

94.    As a result of Defendant's conversion of Plaintiffs' personal property, Plaintiffs have suffered consequential damages in an amount to be determined at trial.

95.    As a result of Defendant's conversion of Plaintiffs' personal property, Plaintiffs

have suffered non-economic damages in an amount to be determined at trial.

96.    Plaintiffs are entitled to recover attorney's fees and costs under the terms of the contract used in the August 17, 2011 transaction, and the contract that *should* have been used in the August 17, 2011 transaction pursuant to NRS 97.299, NAC 97.110.

**8.    Violations of NRS Chapter 104: Uniform Commercial Code**

97.    NRS 104.1304 imposes the obligation of good faith in the performance of every contract or duty within Chapter 104. NRS 104.1201(t) provides that "good faith" means honesty-in-fact and the observance of reasonable commercial standards of fair dealing.

98.    Defendant failed and refused to act honestly and to observe reasonable commercial standards of fair dealing, including, but not limited to: failing to adhere to TILA regulations, i.e. failing to state the APR as 52.662% and repossessing the vehicle when the Plaintiff was not in default.

99.    NRS 104.9611(2) requires a secured party to send a debtor a notification before disposition of collateral.

100.    NRS 104.9614(1)(a) requires that notification to the debtor must contain the information required by NRS 104.9613(1), namely:

    i.    The method of intended disposition;

    ii.    Statement that the debtor is entitled to an accounting of the unpaid indebtedness and the charge, if any, for the accounting; and

    iii.    The time and place of a public disposition or the time after which any other disposition is to be made.

101.    Defendant failed to provide Plaintiff with a notification before disposition of collateral that contained the information required by NRS 104.9613(1).

102.    Furthermore, the law provides that the debtor has the right to redeem the collateral

at any time before the sale is consummated.  NRS 104.9623(3)(b).  *See also* the safe harbor notice form contained in NRS 104.9614(3), stating: "You can get the property back at any time before we sell it . . . ."

103.    Defendant never gave notice to Plaintiff of the intended disposition pursuant to NRS 104.9623(3)(b) or NRS 104.9613.

104.    NRS 104.9610 requires that every aspect of disposition of collateral be commercially reasonable.  Notice violations, or failure to provide notice, alone render a disposition commercially unreasonable.

105.    For a commercially unreasonable disposition, Plaintiff is entitled to double his actual damages under NRS 482.5163(3).

106.    As a result of Defendants' commercially unreasonable disposition, Plaintiff suffered actual damages.  NRS 104.9625(2) provides that a defendant is liable for "any loss caused by failure to comply with this article."

107.    Additionally, NRS 104.9625(3)(b) provides that a debtor has a right to recover statutory damages in "an amount not less than the credit service charge plus 10 percent of the principal amount of the obligation."  Here, the finance charge was $3,000.00.  The principal $7,771.30.  Statutory damages compute to $3,000.00 + (.10 x $7,771.30) = $3,777.13.

### 9.    Breach of Contract

108.    Plaintiffs and Defendant entered into a valid and existing contract on August 17, 2011.

109.    Plaintiff performed under the terms of the Lease Agreement or was excused from performance.

110.    Defendant established a pattern and practice of accepting late payments from Plaintiff without exercising its right to repossess under the Contract.  Under Nevada law, ". . . a

secured party who has not insisted upon strict compliance in the past, who has accepted late payments as a matter of course, [m]ust, before he may validly rely upon such a clause to declare default and effect repossession, [g]ive notice to the debtor (lessee) that strict compliance with the terms of the contract will be demanded henceforth if repossession is to be avoided." Nevada National Bank v. Huff, 94 Nev. 506, 512, 582 P.2d 364, 369 (1978) (*citing* Ford Motor Credit Company v. Waters, 273 So.2d 96 (Fla.App., 1973); Fontaine v. Industrial National Bank of Rhode Island, 111 R.I. 6, 298 A.2d 521, 11 U.C.C. Rptr, 1096 (1973); Kupka v. Morey, 541 P.2d 740 (Alaska, 1975); *and* Varela v. Wells Fargo Bank, 15 Cal. App. 741, 93 Cal. Rptr. 428 (Cal.App., 1971)).

111.    Defendant breached its contract with Plaintiff by, without first giving Plaintiff notice that henceforth strict compliance with the terms of the contract would be required, repossessing the vehicle.

112.    Plaintiff has sustained damages as a result of Defendant's breach of contract, *i.e.* actual damages of no less than $8,200.00, which is the total Plaintiffs have paid Defendant for the vehicle.

113.    As a result of Defendant's breach of contract, Plaintiffs have suffered consequential damages, including, but not limited to, loss of time and loss of use, in an amount to be determined at trial.

**8.    Declaratory Judgment**

114.    The allegations contained in paragraphs # through ## are repeated and realleged as though here fully set forth.

115.    Declaratory relief is a historical equitable remedy.  In addition, 28 U.S.C. §

///

///

2201(a) provides, in relevant part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

Further, in the event that this Court finds that Plaintiff is a victim of "consumer fraud" as that term is defined in NRS 41.600, then NRS 41.600(3)(b) authorizes declaratory relief where a party has been a victim of consumer fraud.

116.    The facts stated above herein reveal a justiciable controversy in which a claim of right is asserted against one who has an interest in contesting it.

117.    The controversy is between persons whose interests are adverse.

118.    The Plaintiffs have a legally protectable interest in the controversy.

119.    The issue involved in the controversy is ripe for determination.

120.    The court has the power by law to declare the rights, status and other legal relations of the Parties whether or not further relief is or could be claimed, and a declaration may be either affirmative or negative in form and effect, and such declarations have the force and effect of a final judgment or decree.

121.    The Plaintiff seeks all equitable declaratory relief and/or statutory declaratory relief that arises from or is implied by the facts, whether or not specifically requested, including, but not limited to: (a) a declaration that the August 17, 2011 Contract is void and unenforceable; (b) a declaration that the Plaintiff is entitled to disgorgement by Defendant of all sums collected under the August 17, 2011 Contract; (c) a declaration that the Plaintiff is entitled to attorney's fees and costs.

///

## VI. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff requests the following relief:

1.    Actual damages of no less than $8,200;

2.    Consequential damages in an amount to be proven at trial;

3.    Rescission and restitution;

4.    Statutory damages in the amount of $1,000.00 under 15 U.S.C. § 1640(a)(2)(a)(i);

5.    Statutory damages pursuant to NRS 104.9625(3)(b) of $3,777.13.

5.    A declaration that the August 17, 2011 Contract is void and unenforceable; that the Plaintiff is entitled to disgorgement by Defendant of all sums collected under the August 17, 2011 Contract, including the value of any trade-in collateral; and that the Plaintiff is entitled to attorney's fees and costs;

7.    Punitive damages in an amount sufficient to punish Defendant and discourage others from like conduct;

8.    Attorney fees and costs; and

9.    Such other and further relief as the court deems just and equitable.

DATED this __31th__ day of July, 2012.

**LEGAL AID CENTER OF
SOUTHERN NEVADA, INC.**


  /s/ JILL C. DAVIS, ESQ.
JILL C. DAVIS, Esq.
Nevada Bar No. 8418
800 S. Eighth Street
Las Vegas, NV  89101
Telephone: (702) 386-1070 x 107
Facsimile:  (702) 388-1642
Attorneys for Plaintiffs

///

///

## DEMAND FOR JURY TRIAL

Plaintiffs hereby request a trial by jury.

DATED this __16th__ day of July, 2012.

**LEGAL AID CENTER OF
SOUTHERN NEVADA, INC.**


/s/   JILL C. DAVIS
JILL C. DAVIS, ESQ.
Nevada Bar No: 8418
800 S. Eighth Street
Las Vegas, NV  89101
Telephone: (702) 386-1070 x 107
Facsimile:  (702) 388-1642
jgriffin@lacsn.org
Attorney for Plaintiff