GUS W. FLANGAS, ESQ.
Nevada Bar No.: 004989
Email: GWF@flangasmcmillan.com
KIM D. PRICE, ESQ.
Nevada Bar No. 007873
E-mail: KDP@flangasmcmillan.com
**FLANGAS McMILLAN LAW GROUP**
3275 S. Jones Boulevard, Ste. 105
Las Vegas, Nevada 89146
Telephone: (702) 307-9500
Facsimile: (702) 382-9452
*Attorneys for Defendant, Auto Gallery, Inc.*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

|  |  |
|---|---|
| MARIA TREJO DE ZAMORA and ISELZ GOMEZ-DEHINES,<br><br>Plaintiffs,<br><br>v.<br><br>AUTO GALLERY, INC.,<br><br>Defendant. | CASE NO.:2:12-cv-01357-MMD -CWH<br><br>**DEFENDANT'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT** |

COMES NOW the Defendant, AUTO GALLERY, INC., by and through its attorneys of record, GUS W. FLANGAS, ESQ. and KIM D. PRICE, ESQ. of the FLANGAS MCMILLAN LAW GROUP and hereby opposes Plaintiffs' Motion for Summary Judgment.

This Motion is based upon the Pleadings and Papers on file herein, the attached Points and Authorities, the Affidavits and exhibits included herewith and any oral argument to be made by

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

1   counsel at any Hearing in this matter.

2        DATED this 22d day of April, 2013.

3                                              FLANGAS McMILLAN LAW GROUP

4

5                                              _____
                                               GUS W. FLANGAS, ESQ.
6                                              Nevada Bar No.  004989
                                               E-mail: GWF@flangasmcmillan.com
7                                              KIM D. PRICE, ESQ.
                                               Nevada Bar No.  007873
8                                              E-mail: KDP@flangasmcmillan.com
                                               3275 South Jones Blvd., Suite 105
9                                              Las Vegas, Nevada 89146
                                               Telephone:  (702) 307-9500
10                                             Facsimile: (702) 382-9452
                                               *Attorneys for Defendant*

11

12                  **MEMORANDUM OF POINTS AND AUTHORITIES**

13        Attempting to skirt obvious issues of genuine fact, Plaintiffs merely ignore troublesome facts

14   that defeat their testimony.  Plaintiffs falsely testify that the subject transaction occurred on and after

15   August 17, 2011.  As is evidenced from the documents produced to Plaintiffs during discovery, it

16   is clear Plaintiffs avoid any mention of the significant dealings between the parties beginning on

17   August 3, 2011.[1]   If for no other reason, Plaintiffs' refusal to even acknowledge significant

18   interactions between the parties prior to August 17, 2011 illustrates the presence of genuine issues

19   of material fact such that summary judgment must be denied..  Moreover, Plaintiffs demand

20   Defendant's compliance with NAC 97.110 – a regulation repealed effective March 1, 2012.[2]  This

21   regulation provided the form of a contract for a *simple interest* transaction.[3]  As is clear from the

22   documents, the subject transaction was ***not*** merely a *simple interest* transaction, but was instead, a

23   a pre-computed or interest-added transaction.  Plaintiffs rabidly insist upon strict application of this

---

24        [1]  See Affidavit of Pejman Zahedi attached hereto as **EXHIBIT A.**

25        [2]  See Adopted Regulations of the Commissioner of Financial Institutions, LCB File No.
     R016-10, effective March 1, 2012; relevant portion excerpted and attached hereto as **EXHIBIT B.**

26        [3]  See Former NAC 97.110, repealed effective March 1, 2012, attached hereto as **EXHIBIT
     C.**

inapplicable contract form, a position which has been flawed since before the outset of this litigation. Between Plaintiffs' inaccurate testimony, the inapplicability of the regulation to the instant transaction, and the numerous genuine issues of fact extant, Plaintiffs' Motion must be denied.

## I.

## STATEMENT OF UNCONTESTED FACTS

In compliance with LR 56-1, Auto Gallery submits the following uncontested facts:

1.      On or about August 3, 2011, Plaintiffs came to the used car lot operated by Auto Gallery and were assisted by its owner, Pejman Zahedi (hereinafter referred to as "Mr. Zahedi").[4]

2.      Mr. Zahedi, who speaks only Farsi and English as his second language,[5] assisted Plaintiffs who apparently speak Spanish with English as their second language.[6]

3.      Auto Gallery employs no salespersons, "assistants" or anyone else who speak Spanish.[7]

4.      Contrary to Plaintiffs' sworn testimony, there was no Auto Gallery "assistant" who *could* have provided Spanish translation services for the Plaintiffs[8] – no one who works there speaks Spanish.[9]

5.      Rather, it was Plaintiff Gomez that served as translator for Plaintiff Zamora -- not

---

[4] See Exhibit A.

[5] See Exhibit A and see purported "Uncontested Material Facts" carried in Plaintiffs' Motion, page 5, paragraph 4.

[6] See Affidavit of Maria Treo de Zamora (page 2, paragraph 5) and Affidavit of Isela Gomez-DeHines (page 2, paragraph 5), attached as Exhibit A to Plaintiffs' March 29, 2013 Motion for Summary Judgment.

[7] See Exhibit A and see purported "Uncontested Material Facts" carried in Plaintiffs' Motion, page 5, paragraph 4.

[8] See Affidavit of Maria Treo de Zamora (page 2, paragraph 4) and Affidavit of Isela Gomez-DeHines (page 2, paragraph 4), attached as Exhibit A to Plaintiffs' March 29, 2013 Motion for Summary Judgment.

[9] See Exhibit A and see purported "Uncontested Material Facts" carried in Plaintiffs' Motion, page 5, paragraph 4.

1    anyone affiliated with Auto Gallery.[10]

2        6.        In conjunction with their proposed purchase of a Nissan Xterra, on August 3, 2011,

3    Plaintiff Gomez completed an "Application for Secured Credit" to Nationwide Nevada, attempting

4    to finance $8,644.02.[11]

5        7.        Plaintiff Gomez's application for credit was not submitted to Auto Gallery, but rather,

6    Gomez's application was submitted to an independent third party, Nationwide Nevada.[12]

7        8.        Nationwide Nevada refused to extend credit to Plaintiff Gomez.[13] Nationwide based

8    its refusal to finance Plaintiff Gomez several issues: 1.) on Nationwide's program policy of one car

9    loan per customer; 2.) that Plaintiff Gomez was out of budget; and 3.) that Plaintiff Gomez was

10   much too slow on payment of her existing loan with WFDS.[14]   The rejection letter also notes that

11   Plaintiff Gomez had made two applications for credit in June 2011, of which one was funded, and

12   three applications in May 2011, of which one was funded.[15] For these reasons, Nationwide Nevada

13   declined to extend a loan to Plaintiff Gomez.[16]

14       9.        Despite this refusal of financing, Plaintiffs asked that Auto Gallery hold the Nissan

15   Xterra to allow them an opportunity to arrange alternate financing.[17] In exchange for holding the

16   vehicle, on August 4, 2011, Plaintiffs made a $500 non-refundable deposit.[18]

17       10.       In return for this $500 payment Auto Gallery issued Plaintiffs a receipt (Receipt No.,

18   _____

19   [10] Id.

20   [11] See "Application for Secured Credit" attached hereto as **EXHIBIT D.**

21   [12] Id.

22   [13] See Letter dated August 4, 2011 from David Guay, Nationwide Nevada, LLC to Auto
     Gallery, attached hereto as **EXHIBIT E.**

23

24   [14] Id.

25   [15] Id.

26   [16] Id.

27   [17] See Exhibit A.

28   [18] Id.

163277).[19]  At the top of the Receipt (Receipt No. 163277) issued in conjunction with this $500 non-refundable deposit, the payment arrangement was described as $3,500 down –  consisting of Plaintiffs' payment of $500 on August 4 (which was made and receipted) and a promised additional payment of $3,000 on August 18, 2011.[20]

11.    Yet, August 18, 2011 came and went without Plaintiffs making *any* payment as promised, including their promised payment of $3,000;[21] Plaintiffs made a one-time down payment of $500 only[22] – **_not_** $3,500.[23]

12.    Consequently, Plaintiffs' testimony submitted to this Court appears to be mistaken – Plaintiffs made no $3,000 payment to Auto Gallery and they most definitely did not make a total down payment of $3,500.[24]

13.    Contrary to Plaintiffs' testimony, Auto Gallery's factual statements regarding Plaintiffs' failure to pay $3,000 down payment are thoroughly bolstered and completely supported by examination of the documents previously produced to Plaintiffs.

14.    On August 10, 2011, Plaintiffs informed Auto Gallery that they would not complete the purchase as they could not secure financing.[25]

15.    Despite Plaintiffs understanding that the August 4, 2011 $500 deposit was non-

_____

[19]  See Receipt No. 163277, attached hereto as **EXHIBIT F** and see purported "Uncontested Material Facts" carried in Plaintiffs' Motion, page 6, paragraph 10.

[20]  Id. and see purported "Uncontested Material Facts" carried in Plaintiffs' Motion, page 6, paragraph 10.

[21]  See Exhibit A.

[22]  See Exhibit A.

[23]  See purported "Uncontested Material Facts" carried in Plaintiffs' Motion, page 6, paragraph 10.

[24]  See purported "Uncontested Material Facts" carried in Plaintiffs' Motion, page 6, paragraph 10 and see   Affidavit of Maria Treo de Zamora (page 2, paragraph 9) and Affidavit of Isela Gomez-DeHines (page 2, paragraph 9), attached as Exhibit A to Plaintiffs' Motion for Summary Judgment..

[25]  See Exhibit A.

1    refundable, Plaintiffs absolutely insisted on a full refund of their non-refundable deposit.[26]

2         16.    In good faith and despite the fact that the Plaintiffs understood the non-refundable

3    nature of the $500 deposit, Auto Gallery wrote Plaintiffs a check dated August 10, 2011 in the

4    amount of $500 - representing full repayment of monies deposited by Plaintiffs.[27]

5         17.    Contrary to Plaintiffs' representations and testimony, notably, this refund was ***not*** of

6    the $3,500 deposit to which Plaintiffs testify they tendered, but was instead, a refund of the $500

7    deposit the Plaintiffs actually made.[28]

8         18.    More notably, Plaintiffs did not raise one single complaint as to the ***amount*** of the

9    $500 refund - they complained that they wanted repayment in *cash*, not by check.[29]

10        19.    That the Plaintiffs accepted the $500 in cash without a whisper of protest regarding

11   their alleged payment of an additional $3,000 not only makes no reasonable sense, it defies logic.

12   Plaintiffs' representations and testimony as regards their alleged payment of a $3,500.00 deposit

13   appears highly dubious.[30]

14        20.    As a further act of good faith, Auto Gallery voided its check and repaid Plaintiffs

15   $500 in cash and the transaction was terminated.[31]

16        21.    A notation at the left side of Receipt No. 163277 commemorates the return of

17

18   _____

19   [26] See Exhibit A.

20   [27] Id. and see Check dated August 10, 2011 in the amount of $500, attached hereto as
21   **EXHIBIT G** and see purported "Uncontested Material Facts" carried in Plaintiffs' Motion, page 6,
     paragraph 10.

22   [28] See purported "Uncontested Material Facts" carried in Plaintiffs' Motion, page 6,
23   paragraph 10.

24   [29] See Exhibit A.

25   [30] See purported "Uncontested Material Facts" carried in Plaintiffs' Motion, page 6,
26   paragraph 10 and see Affidavit of Maria Trejo de Zamora (page 2, paragraph 9) and Affidavit of
     Isela Gomez-DeHines (page 2, paragraph 9), attached as Exhibit A to Plaintiffs' March 29, 2013
27   Motion for Summary Judgment.

28   [31] See Exhibit A.

1    Plaintiffs' $500 deposit in cash.[32]

2         22.    Picking up where Plaintiffs only begin their story, on August 17, 2011, Plaintiffs

3    returned to Auto Gallery still desiring to purchase the Nissan Xterra on credit.[33] Again, Mr. Zahedi

4    assisted Plaintiffs upon their return to his car lot.[34]

5         23.    Knowing that Plaintiffs' credit request had been summarily denied, and learning from

6    the Plaintiffs that they could not acquire alternative financing, Auto Gallery agreed that it would

7    finance Plaintiffs.  The terms of Auto Gallery's agreement are carried in the "Motor Vehicle

8    Purchase Order and Federal Disclosure Statement" (hereinafter referred to as the "Purchase

9    Order").[35]

10        24.    Contrary to their representations and sworn testimony, Plaintiffs never requested that

11   Mr. Zahedi or Auto Gallery provide them a copy of this Purchase Order in Spanish.[36] Given that no

12   one from Auto Gallery speaks Spanish, it appears more than improbable that anyone employed by

13   Auto Gallery was capable of completing a Purchase Order published in Spanish.

14        25.    As set forth in the Purchase Order, this was not a simple interest transaction as would

15   have been in made had Nationwide Nevada agreed to extend credit to Plaintiff Gomez.  In such a

16   simple interest transaction, a rate of interest is calculated by  multiplying the principal times the

17   annual rate of interest times the number of years involved.  But Plaintiff Gomez did not qualify for

18   such a simple interest rate transaction and Auto Gallery did not offer to provide financing through

19   a simple interest loan.

20        26.    Instead, the arrangement the parties agreed upon was that Plaintiffs would pay the

21   _____

22       [32] See Exhibit E.

23       [33] See Exhibit A and see purported "Uncontested Material Facts" carried in Plaintiffs'
24   Motion, page 5, paragraphs 1 and 2.

25       [34] See Exhibit A.

26       [35] See "Motor Vehicle Purchase Order and Federal Disclosure Statement" attached hereto
     as **EXHIBIT H.**

27
28       [36] See Exhibit A and see purported "Uncontested Material Facts" carried in Plaintiffs'
     Motion, page 5, paragraph 6.

document fee, title fee, smog fee and pre-computed or add-on interest in the total amount of $3,000.00.[37]

27.     This $3,000.00 financing fee did not consist solely consist of pre-computed or added-on interest as Plaintiffs argue.  Instead, that $3,000 fee consisted of various and sundry fees associated with a used vehicle transaction, and a modest monetary return to Auto Gallery for taking the risk of extending credit to Plaintiff Gomez, who otherwise was not sufficiently creditworthy.[38]

28.     Plaintiffs' testimony and argument that this $3,000 fee represents interest at a rate of 52.662% is not only patently absurd, it is just plain wrong.[39]

29.     Ultimately, Plaintiffs agreed that the purchase price of the vehicle was $7,771.30, plus the $3,000 fee, for a total purchase price of $10,771.30.[40]

30.     The Purchase Order reflects Plaintiffs' promise to make fifteen (15) payments of $718.08 for a total of $10,771.30.[41]  Plaintiffs' first payment was due on September 1, 2011, with all future payments due on the first day of each month for the next 15 months.[42]  Plaintiffs also agreed to a $100 late penalty to be added to the balance due for each payment made after the first day of the month.[43]

31.     Contrary to Plaintiffs' testimony and argument, Auto Gallery's records which were previously produced to Plaintiffs commemorate their payment history and certainly do not support their claim of a $3,500.00 cash down payment.[44]

---

[37]  Id. and see Exhibit H.

[38]  See Exhibit A.

[39]  See Plaintiffs' Motion, page 9, lines 19½ - 20½.

[40]  Id.

[41]  See Exhibit H.

[42]  See Exhibit A, and see Exhibit H.

[43]  Id.

[44]  See Plaintiffs' Payment Record from Auto Gallery, attached hereto as **EXHIBIT I.**

32.    In addition to these terms, the Purchase Order Plaintiffs entered sets forth events of default:

> If you default in the performance of any of the terms and conditions of this agreement, including, but not limited to, making of any payment when due, or become insolvent, or file any proceeding under the U.S. Bankruptcy Code, or upon your demise of, if the vehicle is damaged or destroyed, we have at our option and without notice or demand (1) declare all unpaid sums immediately due and payable, (2) file suit against you for all unpaid sums, (3) **take immediate possession of the motor vehicle.**  Upon taking possession of the motor vehicle and giving us notice as provided by law, **if you do not redeem the vehicle we will sell it at public or private sale**.  We may purchase the vehicle at any sale, the proceeds of sale will be applied first to the expense of retaking, reconditioning, storing and selling the property, and the remainder will be added to the unpaid sums owing under the contract.  Attorneys fees and court costs are allowed too.  If there is any money left over (surplus) it will be paid to you.  If a balance still remains owing, you promise to pay the same upon demand.  Our remedies are cumulative and taking of any action shall not be a waiver or prohibit us from pursuing any other remedy.  You promise to pay reasonable collection costs and attorneys fees in the event we prevail in any action to enforce the terms of this contract.  If you prevail we agree to pay reasonable attorneys fees and court costs.  If the motor vehicle is repossessed we may store any personal property found in the vehicle for your account and at your expense and if you do not claim the property within 90 days after the repossession, we may dispose of the personal property in any manner we deem appropriate without liability to you.  If your payment is more than 10 days late you will be charged 5% of the payment. (Emphases added).[45]

33.    Additionally, Plaintiffs agreed:

> You may prepay all amounts due under this contract any time.  In addition, if you fail to make any payment when due or perform any other agreement provided for under this contract, we may, in addition to other remedies declare all sums immediately due and payable subject to any right to reinstatement as required by law.  In either event, any FINANCE CHARGE owed less any amount needed to bring the FINANCE CHARGE to a minimum of $25.00, will be credited or refunded to you.  No refund of less than $1.00 will be made.[46]

34.    Moreover, Plaintiffs agreed:

> G. OTHER AGREEMENTS OF BUYER
> ... (2) You agree that if we accept monies in sums less than those due or make extensions of due dates of payments under this contract, doing so **will not be a waiver of any later right to enforce the contract terms as written.** (Emphasis added).[47]

35.    On September 9, 2011, (eight days late), Plaintiffs made payment of $1,000,

---

[45] See Exhibit H, page 2, paragraph "E. DEFAULT."

[46] See Exhibit H, page 2, paragraph "D. PREPAYMENT OF AMOUNTS OWED."

[47] See Exhibit H, page 2, paragraph "G. OTHER AGREEMENTS OF BUYER."

evidenced by Receipt No. 163282.[48] This receipt reflects credit for that payment and indicates the outstanding balance of $9,771.30.[49]

36.    On October 17, 2011, (sixteen days late), Plaintiffs made another payment of $1,000 evidenced by Receipt No. 163292.[50] This receipt reflects credit for that payment and indicates the outstanding balance of $8,771.30.[51]

37.    On November 18, 2011 (seventeen days late), Plaintiffs made payment of $1,000 as evidenced by Receipt No. 163302.[52] This receipt reflects credit for that payment and indicates an outstanding balance of $7,771.30.[53]

38.    Notably, Plaintiffs made no payment whatsoever in December 2011, which, in and of itself, is a clear breach of contract by Plaintiffs.[54]

39.    On January 18, 2012 (seventeen days late), Plaintiffs made payment of $500 as evidenced by Receipt No. 163316.[55] This receipt reflects credit for that payment and indicates an outstanding balance of $7,271.30.[56]

40.    On February 15, 2012 (fourteen days late), Plaintiffs made payment of $4,200 as evidenced by Receipt No. 163332.[57] This Receipt is significant in that it reflects Auto Gallery's offer to reduce the overall financing fee by $1,500, which would leave a remaining balance due of

---

[48] See Receipt No., 163282, attached hereto as **EXHIBIT J.**

[49] Id.

[50] See Receipt No. 163292, attached hereto as **EXHIBIT K.**

[51] Id.

[52] See Receipt No. 163302, attached hereto as **EXHIBIT L.**

[53] Id.

[54] See Exhibit A and see Exhibit I.

[55] See Receipt No. 163316, attached hereto as **EXHIBIT M.**

[56] Id.

[57] See Receipt No. 163332, attached hereto as **EXHIBIT N.**

$1,571.30.[58]   In other words, Auto Gallery agreed to reduce the $3,000 financing fee *by half* in exchange for Plaintiffs' agreement to make payment of $571.30 by February 22, 2012, and to make a final $1,000 payment on April 1, 2012.[59]

41.   However, this proposed fee reduction was never triggered because Plaintiffs made no payments on February 22 or on April 1 as promised.[60]   The next payment was not made until April 4, 2012 when Plaintiffs paid $500.00 – the last payment made by Plaintiffs.[61]

42.   Because Plaintiffs reneged on these promised payments, the fee reduction offered by Auto Gallery never became operative – the financing fee remained as originally negotiated and never modified – meaning that the $3,000 financing fee was never reduced by $1,500, and the outstanding balance owed remained at $2,571.30.

43.   In June 2012, prior to filing suit, Auto Gallery's counsel was contacted by Plaintiffs' counsel regarding Plaintiffs' intention to file this lawsuit.   Plaintiffs alleged support for their claims by NAC 97.110, a regulation repealed effective March 1, 2012.

44.   By email of June 20, 2012, Plaintiff furnished Auto Gallery with a copy of that repealed NAC 97.110.

45.   In response, Auto Gallery correctly pointed out to Plaintiffs that NAC 97.110 contemplated the required contract form for a *simple interest* transaction and was wholly inapplicable to the instant transaction; that NAC 97.110 was repealed effective March 1, 2012 and that Plaintiffs could not support their supposed claims against Auto Gallery.[62]

46.   Heedless of their outstanding debt, the numerous concessions made by Auto Gallery

---

[58]   Id. and see Exhibit A.

[59]   Id.

[60]   See Exhibit A and see Exhibit I and see Receipt No. 163357, attached hereto as **EXHIBIT O.**

[61]   See Exhibit A and see Exhibit I.

[62]   See Letter dated June 21, 2012 from Kim D. Price, Esq. to Jill C. Davis, Esq., attached hereto as **EXHIBIT P.**

to facilitate Plaintiffs' purchase; the documents produced to Plaintiffs that refute Plaintiffs' testimony; the inapplicability of a simple interest transaction form to the instant transaction; and the repeal of Nevada regulations, Plaintiffs persistently maintained they owed no outstanding balance and alleged entitlement to possession of the vehicle.

47.     During subsequent communications between counsel, Auto Gallery told Plaintiffs of its intention to repossess the vehicle due to Plaintiffs' refusal to pay the outstanding balance due. By letter of June 21, 2012, Auto Gallery demanded that Plaintiffs complete the transaction pursuant to the Purchase Order by payment of the outstanding balance due of $2,571.30.[63]   Auto Gallery correctly observed that the Purchase Order made provision for the acceleration of full payment.[64] Auto Gallery further stated that in return for full payment of the total balance due by July 5, Auto Gallery would forego the accumulated late payment fees totaling $1,000.00 the Plaintiffs had incurred as a result of ten (10) late payments.[65]

48.     Significantly, the balance due as represented to Plaintiffs' counsel as at June 21, 2012 did not include this $1,000 in accumulated late payment penalties that Plaintiffs had incurred.

49.     Auto Gallery further cautioned that if it did not receive full payment of the balance due on July 5, 2012 it would exercise any and all legal remedies commemorated in the Purchase Order.[66]   Thus, as at June 21, 2012, both Plaintiffs and their counsel were provided ample notice of the potential consequences for Plaintiffs' refusal to make the payments they promised.

50.     Moreover, Auto Gallery wrote Plaintiffs on July 2, 2012 wherein Auto Gallery yet again provided notice to Plaintiffs and their counsel of the potential ramifications of their continued refusal to pay as promised.[67]

---

[63]   See Exhibit O.

[64]   See Exhibit O and see Exhibit H.

[65]   See Exhibit G and see Exhibit I.

[66]   See Exhibit O.

[67]   See Letter dated July 2, 2012 from Kim D. Price, Esq. to Jill C. Davis, Esq., attached hereto as **EXHIBIT Q.**

51.     Yet, Plaintiffs made no payment to Auto Gallery and their counsel made no contact with Auto Gallery during business hours on July 5, 2012 to discuss any payment arrangement or to request any extension. Given this utter lack of communication from Plaintiffs or their counsel, Auto Gallery was left to assume Plaintiffs had no intention to pay their outstanding balance.

52.     Consequently, the evening of July 5, 2012, as Plaintiffs and their counsel were warned, Auto Gallery effectuated recovery of the subject vehicle. Contrary to Plaintiffs' representations and testimony, the vehicle was not wrongly repossessed by Auto Gallery.[68] The vehicle was located outdoors and properly repossessed without incident.[69]

53.     As evidenced in the documents provided to Plaintiffs and contrary to their representations and testimony, Plaintiffs *were* in default when the vehicle was repossessed.[70]

54.     Also contrary to Plaintiffs' representations and testimony, Plaintiffs were ***not*** "ahead with our payments" as at July 5, 2012.[71] Thus, Auto Gallery's repossession of the vehicle was well within its rights pursuant to contract.

Despite documentary evidence proving the contrary, Plaintiffs allege they were not in default on the loan, that they were not in default at the time the vehicle was repossessed, and that by accepting Plaintiffs' late payments, Auto Gallery has somehow waived its right to collect late fees. The preceding recitation of facts and the sheer number of genuine issues of material fact identified and refuted therein, when coupled with the documentation created and maintained by Auto Gallery during the course of business that thoroughly refutes Plaintiffs' testimony and blunts their arguments, it seems clear summary adjudication is unavailable. As such, Plaintiffs' Motion must be denied.

---

[68] See Affidavit of Maria Trejo de Zamora, page 3, paragraph 23 and Affidavit of Affidavit of Isela Gomez-DeHines, page 3, paragraph 23, attached as Exhibit A to Plaintiffs' Motion and see Exhibit A attached hereto.

[69] See Exhibit A.

[70] Id. at Zamora Affidavit, page 3, paragraph 24; page 4, paragraph 27 and DeHines Affidavit at page 3, paragraph 24; page 4, paragraph 28 and see Exhibit A attached hereto and see Exhibit I.

[71] Id. at Zamora Affidavit, page 4, paragraph 27 and DeHines Affidavit, page 4, paragraph 27 and see Exhibit A, and see Exhibit I.

## II.

## LEGAL ARGUMENT

Plaintiffs' entire suit rests on one faulty conclusion - that this loan arrangement was a *simple interest* transaction and that Auto Gallery failed to use the form for *simple interest* vehicle transactions supplied by NAC 97.110.. Plaintiffs accuse Auto Gallery of a *parade of horribles* including violation of TILA, NRS 97, fraudulent misrepresentation, deceptive trade practices, conversion, violation of Nevada's UCC and breach of contract solely on one basis – that Auto Gallery purportedly used the wrong form of contract in its transaction with the Plaintiffs. This suit exists only because Plaintiffs apprehend no distinction between a *simple interest* loan and a pre-computed or add-on interest loan transaction. All of Plaintiffs causes of action and arguments in support of summary adjudication arise directly from their misunderstanding of the gross differences between these two types of loan arrangements. If for no other reason, this one distinct genuine factual question prevents summary adjudication.

After proper recognition of the nature of the loan arrangement between the parties, even the most casual of observers would recognize the distinct differences and features of these two methods of extending loans. The facts as they truly exist do not and cannot support Plaintiffs' testimony, representations or allegations and consequently, their instant Motion must be denied.

**A.   STANDARD OF REVIEW**

While state law controls the substantive issues of the case, the standard for determining whether summary judgment is appropriate calls for a the application of federal law. Sullivan v. Massachusetts Mut. Life Ins. Co., 611 F.2d 261, 263-64 (9th Cir. 1979). The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FRCP 56(a); See Anderson, et. al. v. Liberty Lobby Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

A party moving for summary judgment has the initial burden to demonstrate, "with or without supporting affidavits[,]" the absence of a genuine issue of material fact and that judgment as a matter of law should be granted in the moving party's favor. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986), quoting Fed.R.Civ.P. 56. A court deciding

a motion for summary judgment must view all evidentiary inferences in the light most favorable to the non-moving party. <u>King County v. Rasmussen</u>, 299 F.3d 1077, 1083 (9th Cir.2002). If significant factual issues remain, the motion should be denied. <u>United States v. Carter</u>, 906 F.2d 1375, 1377 (9th Cir.1990).

Once the moving party meets the requirement of Rule 56 by either showing that no genuine issue of material fact remain or that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion who "must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 256. It is not enough for the [nonmoving] party to "rest on mere allegations or denials of his pleadings." <u>Id</u>. Genuine factual issues that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party" must exist. <u>Id</u>. at 250.

"A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing version of the truth." <u>Burns v. Mayer</u>, 175 F.Supp.2d 1259, 1264 (D.Nev. 2001) <u>quoting</u> <u>Sec. & Exch. Comm'n v. Seaboard Corp.</u>, 677 F.2d 1289, 1293 (9th Cir. 1982); <u>see also</u> <u>Anderson</u>, 477 U.S. at 248, 106 S.Ct. At 2510. The facts material in a specific case are to be determined by the substantive law controlling a given case or issue. <u>Anderson</u>, 477 U.S. at 248, 106 S.Ct. At 2510.

A "genuine issue" of material fact exists only when the nonmoving party makes a sufficient showing to establish the essential elements of that party's case, and on which that party would bear the burden of proof at trial. <u>Celotex</u>, 477 U.S. at 322-23, 106 S.Ct. 2548. An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. <u>Anderson</u>, 477 U.S. at 250-51, 106 S.Ct. 2505. "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists" does not preclude summary judgment. <u>Harper v. Wallingford</u>, 877 F.2d 728, 731 (9th Cir.1989). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252, 106 S.Ct. 2505. The "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "Only disputes over facts

1   that might affect the outcome of the suit under the governing law will properly preclude the entry

2   of summary judgment." <u>Anderson</u>, 477 U.S. at 248, 106 S.Ct. 2505.

3       The Ninth Circuit has emphasized that summary judgment may not be avoided merely

4   because there is some purported factual dispute, but only when there is a "genuine issue of material

5   fact." <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d 497, 500 (9th Cir.1992). The Ninth Circuit has found

6   that, to resist a motion for summary judgment, the non-moving party: (1) must make a showing

7   sufficient to establish a genuine issue of fact with respect to any element for which it bears the

8   burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of

9   either party; and (3) must come forward with more persuasive evidence than would otherwise be

10  necessary when the factual context makes the nonmoving party's claim implausible. <u>Id.</u>

11      Between the implausible and erroneous supporting testimony submitted by Plaintiffs and the

12  competent evidence carried in the documents produced to Plaintiffs that more than amply disprove

13  their allegations, Auto Gallery more than satisfies its opposition obligations set forth in <u>Hanon</u>.

14  Accordingly, Plaintiffs' Motion must be denied.

15  **B.    PLAINTIFFS MISREPRESENT THE NATURE OF THE TRANSACTION AND**
    **SEEK TO IMPOSE REQUIREMENTS UPON AUTO GALLERY CONTAINED**
16  **NOWHERE IN THE LAW.**

17      Before and throughout this litigation, Plaintiffs have attempted to mix apples with giraffes,

18  demanding that certain statutory language be included in the purchase documents required nowhere

19  in the law. Plaintiffs contend that the Purchase Order does not comply with NAC 97.110 because

20  "it does not include a description of the method for calculating unearned portion (*sic*) of the finance

21  charge upon repayment in full of the unpaid total of payments as prescribed in NRS 97.255."[72]  Yet,

22  Paragraph D on the second page of the Purchase Order provides for prepayment of amounts owed.[73]

23  Plaintiffs' demand that Auto Gallery comply with the *simple interest* loan transaction form formerly

24  provided at NAC 97.110 is misplaced.  Plaintiffs entire argument in this regard is defeated within

25  the first paragraph of the former regulation upon which they rely:

26  _____

27      [72]  <u>See</u> Motion, page 11, lines 20-23½.

28      [73]  <u>See</u> Exhibit H, page 2, paragraph "D. PREPAYMENT OF AMOUNTS OWED."

> Except as specifically provided in NAC 97.135 for the sale of any vehicle described in that section, the following form of contract of sale and security agreement must be used in any sale of a vehicle if the sale is governed by the provisions of NRS 97.299 ***and simple interest is to be paid in connection with the sale.***.[74]

As discussed *supra*, the arrangement between the parties was not a *simple interest* transaction – Plaintiff Gomez could not qualify for a *simple interest* loan and Plaintiff Zamora didn't even bother to try. Auto Gallery did not offer a transaction where a rate of interest was calculated by multiplying the principal times the annual rate of interest times the number of years involved. The *simple interest* method requires calculating the finance charge "by applying a periodic interest rate to the outstanding balance of the unpaid principal upon every repayment period for the term of the loan." Kathleen E. Keest & Elizabeth Renuart, Nat'l Consumer Law Ctr., The Cost of Credit: Regulation and Legal Challenges §4.3.1.1 at 121 (2d ed.2000). In order to arrive a consistent monthly payment amount, complex calculations must be made to predict the interest due at each payment on the declining principal. Id. at 122-124, The end result is that, for every payment made, the accumulated finance charge for that payment period is paid first, and the remainder is subtracted from the outstanding balance of the debt. Id. at 122. Because interest is paid as it is earned, if the term of the loan is abbreviated by prepayment or other circumstances, there is rarely unearned interest that must be returned to the debtor. Id. §5.5.1 at 182-83. This interest-bearing loan arrangement, which features a declining principal, is what Plaintiffs sought through Plaintiff Gomez's application for financing to Nationwide Nevada, which was denied.

The loan arrangement entered between the parties did not carry an annual percentage rate – Plaintiffs did not qualify for that nature of financing. Instead, Auto Gallery offered an add-on or pre-computed interest loan. Before the widespread use of computers, add-on or precomputed interest was a common method used for installment transactions because it avoided the complex calculations necessary for simple interest. Id. §4.3.2 at 127. In computing add-on interest, the interest charges are applied to the entire principal amount for the entire term, regardless of the declining principal. Id. Because add-on interest is pre-computed, the contract should contain an agreement as to how

---

[74] Former NAC 97.110, paragraph 1.

1   unearned interest will be rebated in the event of prepayment. <u>Id.</u> at 127.

2       Since before this suit was filed, Plaintiffs have unreasonably insisted their loan arrangement

3   was a *simple interest* transaction which should have been commemorated using the form formerly

4   provided by NAC 97.110.  From the provisions of the Purchase Order set forth *supra*, it seems

5   certain that Plaintiffs are mixing apples and giraffes.  The mere fact that Plaintiffs' choose to label

6   this transaction as a  "simple interest loan" does not make it so – the characteristics of the two forms

7   of financing prevent any confusion between the two.  Plaintiffs did not enter into a *simple interest*

8   loan transaction, and merely insisting it so without regard to the identifying characteristics of the two

9   different transaction types does not carry the day.  Auto Gallery had no obligation to employ the form

10   set forth in NAC 97.110 because it was not offering a *simple interest* transaction.  Plaintiffs'

11   argument that NRS 97.110 applies to the instant transaction directly contradicts Nevada law.

12   Plaintiffs agreed to pay one flat fee ($3,000.00) in exchange for Auto Gallery providing financing

13   without requiring a credit application and without Plaintiffs having to make a sizeable down

14   payment. Accordingly, Plaintiffs' Motion must be denied.

15  **C.    ALL REQUIRED DISCLOSURES ARE SET FORTH IN THE PURCHASE ORDER;**
16       **AUTO GALLERY IS NOT IN VIOLATION OF THE LAW.**

17       Given that NAC 97.110 is inapplicable to the transaction at hand, Plaintiffs then rely upon

18   NRS 97.299 as controlling.  Reviewing the disclosure requirements of NRS 97.299 and the Purchase

19   Order, it is obvious that the required disclosures are properly carried within the Purchase Order.

20       Plaintiffs argue that Auto Gallery violated TILA and Regulation Z by "failing to disclose the

21   interest rate and amount financed in the Contract at issue."[75]  Plaintiffs go on to argue that even

22   technical or minor violations of TILA impose liability on the creditor.[76]  Yet, curiously the

23   handwritten notations carried in the "Remarks" section of the Purchase Order shows the <u>total amount</u>

24   <u>financed</u> as "15 payments of $718.08; 15 X $718.08 = $10,771.30."  This disclosed figure is

25   identical to the $10,771.30 indicated as the "Total of Payments."  The documents produced to

26

27       [75] <u>See</u> Plaintiffs' Motion, page 8, lines 12-13.

28       [76] <u>See</u> Plaintiffs' Motion, page 8, lines 9½ - 11.

Plaintiffs by Auto Gallery firmly evidence the making of these disclosures by Auto Gallery to Plaintiffs; Plaintiffs simply refuse to acknowledge this evidence as it refutes their entire lawsuit. Plaintiffs' refusal to even give a fair read to the documents in hand, including the Purchase Order, does not mean that Auto Gallery failed to properly make the disclosure requirement carried in NRS 97.299. Because the Purchase Order provides all of the required disclosures, Auto Gallery did not violate any TILA requirement as Plaintiffs allege. Auto Gallery simply cannot explain Plaintiffs' stubborn refusal to accept Auto Gallery's documentary disclosures that so thoroughly disprove Plaintiffs' testimony and arguments, if not their entire lawsuit. Assuredly, this matter could be much more quickly resolved were Plaintiffs' actually to give a fair read to the documents they were provided by Auto Gallery instead of relying on their obviously flawed recollections and wholly manufactured facts.

Plaintiffs complain that "the amount financed" was not prominent or conspicuous and consequently in violation of TILA and Regulation Z. Again, Plaintiffs merely refuse to give a fair read to the documents provided them by Auto Gallery. Given that this information is *handwritten* on a pre-printed form, that graphical distinction – in and of itself – is sufficiently conspicuous to comply with Auto Gallery's disclosure obligations. Moreover, it is hard to imagine how much more conspicuous such a *handwritten* disclosure on a pre-printed form might be made. 15 U.S.C. §1638(a)(3) and Regulation Z, §226.18(b) make no requirement as to font size or type face - it only requires disclosure – which Auto Gallery provided in conspicuous form. Plaintiffs' signature evidences clear understanding of the amount financed and/or the amount of credit provided. As such, it is difficult to find credibility in Plaintiffs' allegations of violations of TILA and Regulation Z. This factual contention alone signals the impropriety of summary adjudication.

Plaintiffs complain that the Purchase Order fails to disclose the "finance charge" or "a brief description such as the dollar amount the credit will cost you" in violation of 15 U.S.C. §1638(a)(3) and Regulation Z, §226.17(a)(2). Plaintiffs allege, "the finance charge is in small print and does not state a percentage rate." Evidently Plaintiffs are looking at an altogether different Purchase Order because the document furnished by Auto Gallery clearly indicates, in all-caps, bold font, that the "Finance Charge" was $3,000.00. Given that the law makes no font-size requirement for this

disclosure, it seems difficult to imagine a more conspicuous disclosure. Nevertheless, Plaintiffs erroneously argue, "the contract buries the finance charge information and with that fails to inform the consumers what interest rate they are being charges (*sic*)."[77]  Simply stated, other than by this Court's review of the Purchase Order and acknowledgment that this entry is provided in all-caps, bold font, there is no other way for Auto Gallery to refute Plaintiffs' false argument that this disclosure is "in small print."  Plaintiffs' argument in the face of this unquestionable fact is wholly disingenuous - this disclosure is so "buried" in all-caps, bold font – <u>larger</u> than the accompanying disclosures, that Plaintiffs simply cannot or will not acknowledge it.  Yet again, an add-on or pre-computed loan transaction has no interest rate to report, which is one of the features that distinguish this loan arrangement from a *simple interest* transaction.  After a proper, neutral review of the Purchase Order and its conspicuous disclosures, Plaintiffs' testimony and argument lack credence.

Plaintiffs complain that Auto Gallery did not disclose "finance charge" and the "annual percentage rate" of the loan in violation of 15 U.S.C. §1638(a)(4) and Regulation Z, §226.18(e).  As analyzed above, given the nature of the loan transaction, there was no annual percentage rate to report – which is why no annual percentage rate is disclosed on the Purchase Order.  Moreover, it is not even a matter of 0% interest that Auto Gallery could have reported– an add-on or pre-computed loan carries no annual interest rate because the rate of interest on the principal does not change as the principal is paid down.  Frankly, there was no way Auto Gallery ***could*** disclose such non-existent information regarding an annual rate of interest where no such percentage rate exists.  Plaintiffs attempt to charge Auto Gallery with non-compliance because it ***cannot*** report a non-existent interest rate.  The very notion is absurd.

Plaintiffs argue that Auto Gallery violated 15 U.S.C. §1638(a)(2)(B) and Regulation Z, §226.18( c) by failing to provide a written itemization of the amount financed.  Yet again, the only support for Plaintiffs' allegations is that they refuse to acknowledge and accept the disclosures carried within the Purchase Order.  The Purchase Order provides a written itemization of the amounts financed – Plaintiffs merely chose to ignore it in favor of improperly pursuing the instant

---

[77] <u>See</u> Motion, page 9, lines 20½ - 21½.

1  lawsuit.

2          Plaintiffs argue that Auto Gallery failed to include a separate written itemization of the

3  amount financed, including any amounts paid to other persons by the creditor on the consumer's

4  behalf, specifically public officials or government agencies. Yet again, Plaintiffs merely demonstrate

5  their refusal to provide a fair read of the Purchase Order provided. The Purchase Order states: "In

6  the event the estimated Department of Motor Vehicles fees are greater than the amount shown, you

7  will pay the excess to us on demand. If they are less, we will refund the excess to you."[78] As such,

8  there is a disclosure of amounts paid to government agencies as Plaintiffs demand. Plaintiffs' refusal

9  to accept and acknowledge evidence fatal to their lawsuit does not create any violation of law by

10  Auto Gallery.

11          Plaintiffs argue that Auto Gallery violated NRS 97.229, yet, the plain language of the statute,

12  "The forms prescribed pursuant to subsection 1 must meet the requirements of NRS 97.165 [and]

13  must be accepted and acted upon by any lender to whom the application for credit is made..."

14  Significantly, Plaintiffs made no application for credit from Auto Gallery. Plaintiff Gomez

15  submitted one (1) application for credit -- to Nationwide Nevada, which was summarily rejected.

16  Auto Gallery did not request either a credit application or a credit check of the Plaintiffs, nor did

17  Auto Gallery require a sizeable down payment. This was not a bank or third-party financed

18  transaction – it was a "Buy Here; Pay Here" transaction. Consequently, despite Plaintiffs' arguments

19  to the contrary, Auto Gallery had no obligation to provide language in the Purchase Order that is not

20  required by state or federal law such as Plaintiffs demand.

21          Moreover, Plaintiffs argue that Auto Gallery violated NRS 97.229 "by failing to use the form

22  prescribed by the Commissioner of Financial Institutions (found in NAC 97.110) for contracts to be

23  used in the sale of vehicles involving the taking of a security interest to secure all or part of the

24  purchase price of the vehicle, the application for credit is made to or through the seller of the

25  vehicles, the seller is a dealer and the sale is not a commercial transaction."[79]   Again, as analyzed

26  _____

27      [78]  See Exhibit H, page 2, Paragraph "G. Other Agreements of Buyer."

28      [79]  See Plaintiffs' Motion, page 11, lines 13½ - 18.

1   *supra*, the subject transaction was not a *simple interest* loan transaction such that the form provided

2   in former NAC 97.110 was required.  Plaintiffs simply refuse to acknowledge the distinctions and

3   differences between these two loan arrangements and seek to impose inapplicable requirements upon

4   Auto Gallery.

5          Plaintiffs continue argument in stating that Auto Gallery failed to include the aggregate

6   amount of official fees in the written contract.[80]  Again, Plaintiffs ignore the disclosures provided

7   on the Purchase Order, where the aggregate fee for the loan is clearly and conspicuously indicated

8   as $3,000.00.  Auto Gallery made the required disclosure, Plaintiffs merely choose to ignore it in

9   favor of filing and maintaining the instant lawsuit.

10         Plaintiffs further argue that Auto Gallery violated NRS 97.229(2)(d) by failing to include a

11   description of the method for calculating the unearned portion of the finance charge upon

12   prepayment.  In this argument, Plaintiffs display their clear lack of familiarity with the contents and

13   disclosures made in the Purchase Order – specifically page 2, Paragraph D, entitled, "Prepayment

14   of Amounts Owed."  Plaintiffs stubborn refusal to give the Purchase Order a fair read or to

15   acknowledge the disclosures that were properly made may not result in them prevailing at summary

16   judgment.  Auto Gallery properly disclosed this information to Plaintiffs, they simply  refuse to

17   acknowledge that disclosure.

18         Plaintiffs allege Auto Gallery violated NRS Chapter 97 and NRS 482.3277 by failing to

19   provide the Purchase Order in Spanish.  Plaintiffs' sworn testimony is that Auto Gallery's "assistant"

20   provided Spanish translation.  Plaintiffs' testimony is not credible given that Auto Gallery employs

21   no persons who speak Spanish.  Further, Plaintiffs argue they relied  upon "poor Spanish" provided

22   by Auto Gallery's employee.  Given Mr. Zahedi's testimony to the contrary, the "poor Spanish" upon

23   which Plaintiffs relied was provided by Plaintiff Gomez – ***not*** by any Auto Gallery employee.  This

24   contention merely identifies yet another genuine issue of material fact precluding summary

25   adjudication.

26         Plaintiffs continue by arguing that because the Purchase Order was not in Spanish, they could

27   _____

28         [80] See Plaintiffs' Motion, page 11, lines 18 - 20.

not understand the amount of the finance charge and percent of interest.  Again, that there was no percent of interest to disclose is firmly established given the add-on or pre-computed interest nature of the loan transaction.  Moreover, the finance charge of $3,000 is clearly provided in numerical form, which, upon information and belief, is the same numeric form used by Spanish-speaking individuals.  Plaintiff Gomez supplied the Spanish translation for this transaction – since no person affiliated with Auto Gallery speaks Spanish, Auto Gallery can only presume Plaintiff Gomez competently and correctly informed Plaintiff Zamora during the negotiations.  Auto Gallery ermploys no one that speaks Spanish, so there was no one to confirm the accuracy of the translation provided by Plaintiff Gomez.

Since the amount of the finance fee was a primary topic of negotiation, presumably Plaintiff Gomez properly translated "$3,000" into Spanish as is disclosed in numerical form on the Purchase Order.  To date, no state or federal law requires Auto Gallery employ foreign-language speaking salesmen, assistants, etc.  Moreover, if Plaintiffs did not understand the transaction they negotiated, they could have walked away from the deal.  Now through false testimony regarding the language ability of Auto Gallery's employees, Plaintiffs seek to unwind the deal they negotiated and understood as is evidenced by the executed Purchase Order.

Plaintiffs allege that Auto Gallery violated Regulation Z and TILA because the Purchase Order failed to disclose the APR and include a brief description, such as the cost of credit as a yearly rate.  Yet, as analyzed at length *supra*, this was not a simple interest loan transaction featuring an annual percentage rate or rate of interest charged.  Thus, as a purely practical matter, Auto Gallery could not disclose information that did not exist.

At the end of the day, all of the required disclosures complained of by Plaintiffs are present in the Purchase Order the parties executed.  As stated, Plaintiffs' testimony and arguments avoid these numerous and significant issues of fact; Plaintiffs' refusal to provide the Purchase Orders a fair read is wholly insufficient to support summary adjudication.  As a result, Plaintiffs' Motion must be denied.

**C.**   **AUTO GALLERY MADE NO MATERIAL MISREPRESENTATIONS.**

Plaintiffs allegation as to fraud rests solely on their stubborn insistence that Auto Gallery

should have used the *simple interest* transaction form provided by NAC 97.110 for this add-on or pre-computed interest transaction. Plaintiffs argument rests on the supposed lack of disclosures clearly provided in the Purchase Order they executed. A simple fair read of this document blunts all of Plaintiffs' arguments in this regard.

Plaintiffs claim fraud because Auto Gallery did not disclose a non-existent annual percentage rate. Auto Gallery avers that it cannot disclose information that does not exist. Further, as discussed *supra*, Plaintiffs' characterization of 52.662% interest is manifestly wrong as they simply ignore the inconvenient fact that various fees associated with a used vehicle transaction are included in the $3,000 financing fee. Obviously, this is a disputed fact, material to the transaction, that precludes summary judgment. Plaintiffs' simple refusal to recognize and acknowledge the true facts of the transaction does not and cannot support summary adjudication.

Plaintiffs, who repeatedly and often failed to comply with their payment promises over the course of years, suffered no damages. As the documents produced to Plaintiffs commemorate, over and again Plaintiffs breached their promise to pay, accruing late fee penalties with each tardy or missed payment. The Purchase Order Plaintiffs entered specifically states that Auto Gallery's agreement to accept late payment did not waive their right to collect these payment penalties.

Plaintiffs' false testimony that Auto Gallery provided Spanish translation does not carry the day either. If Mr. Zahedi, the Auto Gallery salesman who does not speak Spanish, negotiated with Plaintiffs who do not speak English – no transaction could have occurred because of a failure to communicate. Rather, it was Plaintiff Gomez who provided the translation service to Plaintiff Zamora. If there was any failure to disclose, it falls on Plaintiff Gomez; the blame cannot lie on Mr. Zahedi who does not even speak the language.

**D.    AUTO GALLERY DID NOT ENGAGE IN DECEPTIVE TRADE PRACTICES.**

Yet again, the only support for Plaintiffs' allegation of deceptive trade practice is Auto Gallery's failure to disclose a non-existent annual percentage rate. It seems axiomatic that a failure to disclose a non-existent fact cannot amount to consumer fraud. The State of Nevada recognizes the distinction between a *simple interest* transaction and an add-on or pre-computed interest transaction – Plaintiffs' entire suit rests on Plaintiffs' failure to apprehend and appreciate the

1   distinctions between these two forms of loan financing. Auto Gallery did not fail to disclose –

2   instead, Plaintiffs refuse to give a fair read to the Purchase Order they executed. Such abject refusal

3   to evenhandedly review the Purchase Order displays the absolute presence of a genuine issue of fact

4   such that summary judgment is precluded.

5        Again, the documents produced to Plaintiffs thoroughly refute their erroneous representation

6   that they were not in default at the time the vehicle was repossessed. Counsel for the parties had

7   previously communicated regarding both Auto Gallery's demand for payment and the potential

8   ramifications should Plaintiffs refuse to honor their promises. Neither Plaintiffs nor their counsel

9   contacted Auto Gallery regarding any payment arrangement or mutual resolution of this matter –

10   instead, Plaintiffs waited in the bushes for Auto Gallery to act as it had indicated it would and then

11   filed suit and the instant Motion supported by false testimony. Rather than Auto Gallery practicing

12   consumer fraud through its failure to disclose a non-existent annual percentage rate, it more so

13   appears that Plaintiffs willfully deceived Auto Gallery through their frequent and repeated false

14   promises of payment.

15   **E.    REPOSSESSION FOLLOWING BREACH OF THE AGREEMENT DOES NOT AND**

16   **CANNOT CONSTITUTE CONVERSION.**

17        The first sentence of Plaintiffs' argument regarding conversion readily defeats Plaintiffs'

18   claim of conversion. Under the case Plaintiffs rely upon, Edwards v. Emperor's Garden Rest, 122

19   Nev. 317, 328, 130 P.3d 1280, 1287 (2006), Plaintiffs must prove that Auto Gallery "wrongfully

20   exerted [dominion]" over Plaintiffs' personal property. Yet, pursuant to paragraph "E. DEFAULT",

21   Plaintiffs agreed that if they defaulted, Auto Gallery "have at our option and without notice or

22   demand... (3) take immediate possession of the motor vehicle."[81]

23        The documents produced to Plaintiffs clearly commemorate that Plaintiffs made their last

24   payment on April 4, 2012. Consequently, Plaintiffs' testimony they were "in full compliance with

25   the terms of the August 17, 2011 contract" is false. Further, Auto Gallery provided clear notice of

26   its intentions in letters to Plaintiffs' counsel of June 21 and July 2, 2012. Yet, neither Plaintiffs nor

27   _____

28   [81] See Exhibit H, page 2, paragraph "E. DEFAULT."

their counsel bothered to contact Auto Gallery to discuss its potential actions or to make any payment arrangement. Therefore, Auto Gallery did not "*wrongfully*" exert dominion over the vehicle.

There is clearly nothing wrong or unconscionable in a contract clause authorizing repossession of the vehicle upon default. Nevada National Bank v. Huff, 94 Nev. 506, 582 P.2d 364 (1978) citing Lawrence Barker, Inc. v. Briggs, 39 Cal.2d 654, 248 P.2d 897 (1952). Article 9-503 of the UCC specifically authorizes such self-help remedies upon the condition that they be carried out without breach of the peace. Id. The UCC does not define "breach of the peace." Axiomatically, a breach of the peace includes both the potential for violence or physical confrontation – neither of which occurred when Auto Gallery repossessed the vehicle. Thus, there was nothing "outrageous" or "malicious" to support an award of any such claims.

## F.    AUTO GALLERY DID NOT VIOLATE THE UCC.

Plaintiffs' allegation in this regard remains grounded on their erroneous insistence that this was a *simple interest"* transaction. Plaintiffs' complaints in this regard are grounded on Auto Gallery's inability to disclose a non-existent annual percentage rate and repossession of the vehicle where Auto Gallery's records, provided to Plaintiffs, clearly commemorate their defaults. The letters to Plaintiffs' counsel assuredly operate as notice to Plaintiffs of Auto Gallery's intent to exercise its rights under the Purchase Order. Yet, Plaintiffs allege Auto Gallery failed to provide notice of its intentions. Auto Gallery exercised rights extended it under the UCC, which security interest is clearly set forth in the Purchase Order.[82] Consequently, Plaintiffs are foreclosed from their testimony that Auto Gallery never provided any notice. Between Plaintiffs' stubborn insistence that this add-on or pre-computed interest be commemorated on the official form provided for *simple interest* transactions defies logic. The provision of this notice exposes yet another genuine issue of material fact precluding summary adjudication.

/ / /

/ / /

---

[82] See Exhibit H, page 2, paragraph "E.DEFAULT."

1
2

**G.     PLAINTIFFS WERE FIRST TO BREACH THE CONTRACT RELIEVING AUTO
         GALLERY OF ANY FURTHER DUTIES OF PERFORMANCE.**

3          Plaintiffs contend that Auto Gallery breached the contract between the parties by accepting

4    late payments without exercising its right to repossess.  Again, the documents produced to Plaintiffs

5    defeat this argument. The Purchase Order states: "(2) You agree that if we accept monies in sums

6    less than those due or make extensions of due dates of payments under this contract, doing so will

7    not be a waiver of any later right to enforce the contract terms as written."[83]  Plaintiffs specifically

8    acknowledged that Auto Gallery's acceptance of late payments did not operate as a waiver.  When

9    coupled with Plaintiffs' failures to pay as promised, it seems clear Plaintiffs were the first to breach

10   the contract.

11         It is long and well established in Nevada that the party who commits the first breach of a

12   contract cannot maintain an action against the other for a subsequent failure to perform.  Bradley v.

13   Nevada-California-Oregon Ry., 42 Nev. 411, 178 P. 906 (1919).  Plaintiffs first breached the contact

14   in failing to pay the promised $3,000 additional down payment.  Each subsequent failure of promised

15   payments constituted serial violations.  Nevada law requires that before Auto Gallery could properly

16   rely upon the default and repossession clause of the Purchase Order, it was required to give notice

17   that strict compliance would henceforth be required in order to avert repossession.  Nevada National

18   Bank v. Huff, 94 Nev. 506, 514 582 P.2d 364, 370 (1978).  By letter of June 21, well prior to the

19   repossession, Auto Gallery informed Plaintiffs that it demanded strict compliance – thus there was

20   no failure of notice.  Despite this notice, never once did Plaintiffs or their counsel contact Auto

21   Gallery to discuss their default or to make alternate payment arrangements.

22          Moreover, contrary to Plaintiffs' testimony and argument, Plaintiffs did not rely upon Auto

23   Gallery's acceptance of late payments.  Instead, Plaintiffs made their last payment on April 4, 2012

24   and absolutely insisted they were not in default, despite the payment records maintained by Auto

25   Gallery that prove otherwise.  Plaintiffs drew a line in the sand and held to their erroneous position

26   they had fully paid for the vehicle.  Auto Gallery cannot be held responsible where the written

27   _____

28          [83]  See Exhibit H, page 2, paragraph "G. OTHER AGREEMENTS OF BUYER."

1   payment records unquestionably evidence Plaintiffs' default.

2          Plaintiffs cannot breach the contract, wait for Auto Gallery to respond to their breach, and

3   then be heard to complain that Auto Gallery breached the contract.  This argument is specious.

4                                              **III.**

5                                         **CONCLUSION**

6          Plaintiffs' stubborn refusal to acknowledge the obvious differences between a *simple*

7   *interest* loan and an add-on or pre-computed loan is the only basis for their entire suit.  Remarkably,

8   the State of Nevada recognizes this distinction, but Plaintiffs cannot be swayed from their erroneous

9   position.  As is evident from their sworn testimony, no amount of persuasion will convince Plaintiffs

10  they are simply wrong in this regard.  In and of itself, this issue indicates the impropriety of summary

11  judgment.  When coupled with Plaintiffs' erroneous testimony regarding their prior interactions with

12  Auto Gallery, the sheer number of genuine issues of material fact is nearly overwhelming.  Plaintiffs

13  can find no solace where they were the first to breach the agreement they entered with Auto Gallery,

14  nor should they.

15         Auto Gallery provided all disclosures required under state and federal law.  By doing so,

16  Auto Gallery complied with all requirements of TILA, Regulation Z, the UCC and other applicable

17  laws.  As such, Plaintiffs' allegations ring hollow.  As a consequence, Plaintiffs' Motion must be

18  denied.

19         DATED this 22d day of April, 2013.

20
                                    FLANGAS MCMILLAN LAW GROUP
21

22                                  GUS W. FLANGAS, ESQ.
                                    Nevada Bar No. 004989
23                                  E-mail: GWF@flangasmcmillan.com
                                    KIM D. PRICE, ESQ.
24                                  Nevada Bar No.  007873
                                    E-mail: KDP@flangasmcmillan.com
25                                  3275 South Jones Blvd., Suite 105
                                    Las Vegas, Nevada 89146
26                                  Telephone:  (702) 307-9500
                                    Facsimile:  (702) 382-9452
27                                  *Attorneys for Defendant, Auto Gallery, Inc*

28

**CERTIFICATE OF SERVICE**
*Maria Trejo De Zamora and Iselz Gomez-Dehines v. Auto Gallery, Inc.*
U.S.D.C. of Nevada - Las Vegas, Case No.: 2:12-cv-01357-MMD-CWH

I am employed in the County of Clark, State of Nevada. I am over the age of 18 and not a party to the within action; my business address is 3275 So. Jones Blvd., Suite 105, Las Vegas, Nevada 89146.

On APRIL 22, 2013, I caused the following document described as:

**OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

to be served on the interested parties in this action as follows:

Jill C. Davis, Esq.          Jdavis@lacsn.org
Michael R. Joe, Esq.         Mjoe@lacsn.org
LEGAL AID CENTER
OF SOUTHERN NEVADA, INC.
800 S. Eighth Street
Las Vegas, Nevada 89101

X     BY CM/ECF: I caused such document(s) to be served electronically pursuant to the U.S. District Court's Electronic Case Filing Program to be delivered electronically to those parties who have registered to become an E-Filer.

☐     BY U.S. MAIL: I caused such envelope to be deposited in the mail at Las Vegas, Nevada, The envelope was mailed with postage thereon fully prepaid. I am readily familiar with this firm's practice of collection and processing of correspondence for mailing. Under that practice it would be deposited with the U. S. Postal Service on that same day with postage thereon fully prepaid at Las Vegas, Nevada in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid of postal cancellation date or postage meter date is more than one (1) day after date of deposit for mailing in affidavit.

☐     BY ELECTRONIC SERVICE: Based on a court order or an agreement of the parties to accept service by electronic transmission, I caused the documents to be sent to the person(s) at the electronic notification addressed listed below. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☐     BY OVERNIGHT DELIVERY: The documents were placed in sealed, addressed packaging for overnight delivery on this date in the ordinary course of business, with all charges to be paid by my employer, to be deposited in a facility regularly maintained by the overnight delivery carrier, or delivered to a courier or driver authorized by the overnight delivery carrier to receive such packages to the person(s) at the address(es) set forth below.

/ / /

/ / /

/ / /

/ / /

/ / /

1       I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this

2    Court at whose direction the service was made.

3       Executed on April 22, 2013 at Las Vegas, Nevada.

4

5                                              

6                       An employee of Flangas McMillan Law Group

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28    W:\FM NEW DOCS\Auto Gallery\Zamora\US District Court Case\Motions\Opps MSJ 040113.wpd