JILL C. DAVIS, ESQ.
Nevada Bar No.: 8418
MICHAEL R. JOE, ESQ.
Nevada Bar No.: 10626
**LEGAL AID CENTER OF SOUTHERN NEVADA, INC.**
725 E. Charleston Blvd
Las Vegas, NV 89104
Telephone: (702) 386-1070 x 1452
Facsimile: (702) 386-1452
jdavis@lacsn.org

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| MARIA TREJO DE ZAMORA and, ISELA GOMEZ-DEHINES<br><br>Plaintiff,<br><br>vs.<br><br>AUTO GALLERY, INC.<br><br>Defendant(s). | Case No.: 2:12-cv-1357-APG-CWH |

### REPLY TO MOTION FOR SUMMARY JUDGMENT

Plaintiffs, MARIA TREJO DE ZAMORA and ISELA GOMEZ-DEHINES, by and through their counsel, JILL C. DAVIS, Esq. and Michael R. Joe, Esq. of the Legal Aid Center of Southern Nevada, Inc., file this reply to Auto Gallery Inc's opposition to motion for summary judgment.

This Reply is based upon the pleadings and papers on file herein, the attached points and authorities, and affidavits and exhibits included in the Motion for Summary Judgment, and any oral argument to be made by counsel at any hearing in this matter.

///

///

///

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This Complaint arises out of the sale on credit of a 2004 Nissan Xterra, (VIN 5N1ED28T44C66010) from Defendant, AUTO GALLERY, INC., to Plaintiffs, MARIA TREJO DE ZAMORA and ISELA GOMEZ-DEHINES, on August 17, 2011. During the course of the August 17, 2011 transaction and thereafter, Defendant violated numerous state and federal statutes, engaged in fraudulent misrepresentation and converted Plaintiffs' personal property.

### II. LEGAL ARGUMENT

The thrust of Auto Gallery's argument is that it did not have to comply with Nevada law by using the standard prescribed Nevada form contract and that based upon the principle Auto Gallery did not have to make the required lending disclosures. This is incorrect.

**A. Defendant Failed to Use the Proper Nevada Contract**

The retail sales agreement at issue contains a provision for $3,000 in interest, stated as a finance charge. Defendant was required to use the form of contract prescribed by the Commissioner of Financial Institutions, even if the sale of the vehicle was a zero-interest sale.

First, it is NRS Chapter 97 that gives authority to the Commissioner of Financial Institutions to implement the statute through administrative regulations, *i.e.* NAC Chapter 97. Specifically, NRS 97.299(1) mandates that the Commissioner of Financial Institutions prescribe the form of contract to be used when (1) the sale involves the taking of a security interest; (2) the application for credit is made through the seller of the vehicle; (3) the seller is a dealer; and (4) the sale is not a commercial transaction. Further, NRS 97.301 provides that:

> When a vehicle is sold in this state under the circumstances described in subsection 1 of NRS 97.299, the seller and any lender to whom the application for credit is made shall use the forms prescribed pursuant to that section.

Thus, NRS 97.299(1) states the four criteria for the Commissioner's creation of forms for use in a sale, and NRS 97.301 makes the use of the Commissioner's forms of contract mandatory when the prerequisites of NRS 97.299 are met. Next, NRS 97.299(2) states what the forms must contain in subsections (a) through (g), discussed below.

But first, an examination of NRS Chapter 97 plainly evidences a legislative intent that the chapter apply to all retail installment transactions, regardless of payment of a finance charge and under which the buyer agrees to pay the total of payments in one or more installments. NRS 97.115 provides:

> **"Retail installment transaction" defined.** "Retail installment transaction" means a transaction in which a retail buyer purchases goods or services from a retail seller pursuant to a retail installment contract or a retail charge agreement which **may** provide for a finance charge and under which the buyer agrees to pay the total of payments in one or more installments.
>
> (Emphasis added).

Also a "retail seller" is defined in NRS 97.125(1)(c) as:

> (c) A person, other than a financial institution, who regularly extends, whether in connection with sales or leases of goods or services, credit **which is payable by agreement in more than four installments** or for which the payment of a finance charge may be required.
>
> (Emphasis added).

The definition of a "retail seller" is identical to the definition of a "creditor"[2] under TILA in that the definition applies to retail sellers who regularly extend credit that is payable by a written agreement in more than four installments. Accordingly, the Legislature clearly intended that NRS Chapter 97 apply to the vehicle sale at issue in this case.

As concerns the contract for a vehicle sale, the Legislature, in NRS 97.299, in using the plural "forms," clearly contemplated that the Financial Institutions Division would create

---
[2] 12 C.F.R. § 226.1(c)(1).

multiple forms for retail installment sales contracts for vehicle sales. And NRS 97.299(2)(d) states that "[t]he forms prescribed pursuant to [NRS 97.299(1)] **must** . . . [c]ontain a description of the method for calculating the unearned portion of the finance charge upon prepayment in full of the unpaid total of payments as prescribed in NRS 97.225." The **statutory** requirement of NRS 97.301 that Defendant **"shall"** use the forms prescribed pursuant to NRS 97.299(1), which Defendant admittedly did not do, therefore Defendant is not entitled to the $3,000.00 in finance charges. NRS 97.305, which provides:

> A seller who enters into a contract or retail charge agreement which does not comply with the provisions of this chapter or who violates any provision of this chapter, and a lender who violates NRS 97.301, except as a result of an accidental or bona fide error is barred from the recovery of any finance charge, official fees, or any charge for delinquency or collection under or in connection with the related retail installment contract or purchase under a retail charge agreement; but the seller or lender may nevertheless recover from the buyer an amount equal to the cash price of the goods or services and the cost to the seller or lender of any insurance included in the transaction.

Defendant was required to use the Nevada form contract, and therefore based upon Plaintiffs' payments, they are entitled to title to the vehicle as they have paid the cash price for the vehicle, and summary judgment on this issue.

**B.     Defendant Failed to Make the Mandatory Disclosures Required by Law**

The TILA violation is clear. The transaction of August 17, 2011, was a consumer credit transaction within the meaning of TILA, 15 U.S.C. § 1602 and Regulation Z, 12 C.F.R. § 226.2, because:

> i.     Defendant offered to extend credit to Plaintiff, who is a "consumer," as that term is defined in 12 C.F.R. § 226.2(a)(11). 12 C.F.R. § 226.1(c)(1)(i);
>
> ii.    Defendant "regularly" extends credit to consumers, as that term is defined in 12 C.F.R. § 226.2(17)(v). 12 C.F.R. § 226.1(c)(1)(ii);

    iii.    The credit is subject to a "finance charge," as that term is defined in 12 C.F.R. § 226.4(a), or is payable by a written agreement in more than four installments. 12 C.F.R. § 226.1(c)(1)(iii); and

    iv.    The credit is primarily for personal, family, or household purposes. 12 C.F.R. § 226.1(c)(1)(iv).

Defendant, in the contract dated August 17, 2011, failed to disclose the APR in violation of TILA and Regulation Z. TILA and Regulation Z have been violated in the following respects, including, but not limited to:

    i.    The loan agreement fails to disclose the APR and include a brief description, such as "the cost of your credit as a yearly rate," in violation of 15 U.S.C. § 1638(a)(4) and Regulation Z, § 226.18(e);

    ii.    The loan agreement fails to disclose the "amount financed," using that term, and a brief description such as "the amount of credit provided to you or on your behalf," in violation of 15 U.S.C. § 1638(a)(2) and Regulation Z, § 226.18(b).

    iii.    The loan agreement fails to disclose the "finance charge," using that term, and a brief description such as "the dollar amount the credit will cost you," in violation of 15 U.S.C. § 1638(a)(3) and Regulation Z, § 226.18(d).

    iv.    The loan agreement fails to make the terms "finance charge" and "annual percentage rate" more conspicuous than any other disclosure, in violation of 15 U.S.C. § 1632(a) and Regulation Z, § 226.17(a)(2);

    v.    The loan agreement fails to provide a statement of the consumer's right to obtain, upon request, a written itemization of the amount financed, or fails to automatically disclose itemization of the amount financed, including amounts paid to other persons by the creditor on the consumer's behalf, with those persons identified, in violation of 15 U.S.C. § 1638(a)(2)(B) and Regulation Z, § 226.18(c); and

    vi.    The loan agreement fails to include a separate written itemization of the amount financed, including any amounts paid to other persons by the creditor on the consumer's behalf, specifically, public officials or government agencies, as required by Reg. Z, § 226.18(c)(1)(iii).

As a result of these violations of the TILA, Defendant is liable for actual damages pursuant to 15 U.S.C. § 1640(a)(1), and , Defendant is liable for statutory damages in the amount of $1,000.00. Furthermore, Plaintiff is entitled to recover attorney's fees and costs under the

terms of the contract used in the August 17, 2011 transaction, and the contract that *should* have been used in the August 17, 2011 transaction pursuant to NRS 97.299, NAC 97.110.

Defendant cannot simply attempt to contract around Federal disclosure law, and as such summary judgment must be granted as to the TILA violations. The use of the mandatory Nevada contracts ensures that all mandatory financial information is disclosed. The misrepresentation stems from the failure to make the required disclosures, again which would have been prevented if the proper form was used. The deceptive trade practices claim also stems from the lack of disclosures, which again would have been prevented if the proper form was used, as this is why the mandated Nevada forms exist. The Plaintiffs are entitled to summary judgment on the TILA, misrepresentation and deceptive trade practices claims.

**C.    Plaintiffs Were Never In Default on Their Contract When the Vehicle was Wrongfully Repossessed and Therefore Did Not Breach the Contract.**

The Plaintiffs consistently made late payments, and those late payments were accepted by the Defendant. On July 5, 2012 Plaintiffs were in full compliance with the terms of their August 17, 2011 contract, including current on their payments, in fact Plaintiffs were ahead on their contractual payment schedule on July 5, 2012. (Exhibit C to Motion for Summary Judgment) Plaintiffs were to have paid $7,898.88 with their July 2012 payment (718.08 x 11 months September through July), however they had already paid $8,200 on the contract at that date.

The Defendants cannot now attempt to state that strict contract terms were to be applied through settlement negotiation letters. Letters regarding settlement do not meet the *Huff* standard. Under Nevada law, ". . . a secured party who has not insisted upon strict compliance in the past, who has accepted late payments as a matter of course, [m]ust, before he may validly rely upon such a clause to declare default and effect repossession, [g]ive notice to the debtor (lessee) that strict compliance with the terms of the contract will be demanded henceforth if

repossession is to be avoided." *Nevada National Bank v. Huff*, 94 Nev. 506, 512, 582 P.2d 364, 369 (1978) (*citing Ford Motor Credit Company v. Waters*, 273 So.2d 96 (Fla.App., 1973); *Fontaine v. Industrial National Bank of Rhode Island*, 111 R.I. 6, 298 A.2d 521, 11 U.C.C. Rptr, 1096 (1973); Kupka v. Morey, 541 P.2d 740 (Alaska, 1975); *and Varela v. Wells Fargo Bank*, 15 Cal. App. 741, 93 Cal. Rptr. 428 (Cal.App., 1971)).

In *Huff*, the Nevada Supreme Court held that where in the course of performance the debtor was late on every payment and had been two and three payments behind on occasion, the secured party had a duty to give notice to the debtor that "strict compliance with the terms of the long-ignored contract would henceforth be required in order to avert repossession of the vehicle." Nevada Nat'l Bank v. Huff, 582 P.2d 364, 370, 24 U.C.C.Rep. 1044, 1050 (Nev.1978). The Nevada court summarized the law as follows:

> Clearly there is nothing unconscionable in a contract clause authorizing the repossession of a chattel upon default. Indeed, Article 9-503 of the UCC specifically authorizes such self-help remedies upon the condition that they be carried out without breach of the peace. Further, an established course of dealing under which the debtor (lessee) makes continual late payments and the secured party (lessor) accepts them does not result in a waiver of the secured's (sic) party's right to rely upon a clause in the agreement authorizing him to declare a default and repossess the chattel.
> However, it is clear that even though no outright waiver of a secured party's right to rely upon such a clause occurs through a course of dealing involving the acceptance of late payments, a secured party who has not insisted upon strict compliance in the past, who has accepted late payments as a matter of course, must, before he may validly rely upon such a clause to declare a default and effect repossession, give notice to the debtor (lessee) that strict compliance with the terms of the contract will be demanded henceforth if repossession is to be avoided.

Id. at 369, 24 U.C.C.Rep. at 1049 (citations omitted) (emphasis original).

The basis for imposing this duty on the secured party is that the secured party is estopped from asserting his contract rights because his conduct had induced the justified reliance of the

debtor in believing that late payments were acceptable. The acts which induced reliance are the repeated acceptances of late payments and the occasional late charges assessed. The reliance is evidenced by the continued pattern of irregular and late payments.

The settlement letters in this matter were not to the Plaintiffs directly but were part of negotiations prior to a suit being filed. The key to *Huff* is the justified reliance by the debtor, not settlement negotiations with counsel. Summary judgment must be granted as to the Plaintiffs as they were never in default and relied upon consistent acceptance of late payments.

### D.  Defendants Violated of NRS Chapter 104: Uniform Commercial Code

NRS 104.9611(2) requires a secured party to send a debtor a notification before disposition of collateral.

Specifically, NRS 104.9614(1)(a) requires that notification to the debtor must contain the information required by NRS 104.9613(1), namely:

   i.   The method of intended disposition;

   ii.  Statement that the debtor is entitled to an accounting of the unpaid indebtedness and the charge, if any, for the accounting; and

   iii. The time and place of a public disposition or the time after which any other disposition is to be made.

Defendant failed to provide Plaintiffs with a notification before disposition of collateral that contained the information required by NRS 104.9613(1). This did not occur in this matter. Furthermore, the law provides that the debtor has the right to redeem the collateral at any time before the sale is consummated. NRS 104.9623(3)(b). *See also* the safe harbor notice form contained in NRS 104.9614(3), stating: "You can get the property back at any time before we sell it . . . ."

Defendant never gave notice to Plaintiffs of the intended disposition pursuant to NRS

104.9623(3)(b) or NRS 104.9613. NRS 104.9610 requires that every aspect of disposition of collateral be commercially reasonable. Notice violations, or failure to provide notice, alone render a disposition commercially unreasonable.

Defendant agains attempt to use settlement letters to counsel to circumvent Nevada law. This is the same with the *Huff* argument above, the key is notice to the Debtor. Any alleged notice cannot be wrapped up in settlement negotiation letters. Based upon the clear violations of state law, the Plaintiffs are entitled to summary judgment on this issue as no notice was provided to the Plaintiffs.

## IV. CONCLUSION

Plaintiffs are entitled to summary judgment based upon the above arguments. The Plaintiffs are unsophisticated consumers who were taken advantage of by the Defendant. The Defendant failed to use the proper Nevada contract forms which then led to violations of TILA, and misrepresentation of a material element of the contract. Additionally, the Defendant prematurely repossessed the vehicle as the Plaintiffs were ahead on their contract payments and the dealership consistently accepted late payments under the contact. Therefore, summary judgment should be granted for the Plaintiffs.

DATED this __9th__ day of May, 2013.

                        **LEGAL AID CENTER OF**
                        **SOUTHERN NEVADA, INC.**

                        /s/ JILL C. DAVIS, ESQ.
                        JILL C. DAVIS, Esq.
                        Nevada Bar No. 8418
                        **LEGAL AID CENTER OF**
                        **SOUTHERN NEVADA, INC.**
                        725 E. Charleston Blvd
                        Las Vegas, NV 89104
                        Telephone: (702) 386-1070 x 1452
                        Facsimile: (702) 386-1452
                        Attorneys for Plaintiffs