UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| MARIA TREJO DE ZAMORA; ISELA GOMEZ-DEHINES,<br><br>               Plaintiffs,<br><br>   v.<br><br>AUTO GALLERY, INC.,<br><br>               Defendant. | Case No. 2:12-cv-01357-APG-CWH<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**<br><br>(Dkt. No. 17) |

## I.   BACKGROUND

On August 17, 2011, Maria Trejo de Zamora ("Trejo de Zamora") and Isela Gomez-Dehines ("Gomez-Dehines") (collectively, "Plaintiffs") purchased a used Nissan Xterra (the "Vehicle") from defendant Auto Gallery, Inc. ("Auto Gallery"). The Sales Contract mandated 15 monthly payments of $718.08 for a total of $10,771.30, which in turn comprises a purchase price of $7,771.30 and a "finance charge" of $3,000.00. (Dkt. No. 17 at 32.) The initial payment was due on September 1, 2011.

Plaintiffs made payments of $1,000 in the months of September 2011, October 2011, November 2011, and January 2012. They failed to make a payment in December 2011. All of these payments were late except for in September. On February 15, 2012, Plaintiffs made a late payment of $4,200. The parties dispute whether they agreed to modify the Sales Agreement on that date such that the total balance was reduced by $1,500 and due in its entirety by April 1, 2012. Plaintiffs next made a $500 payment on April 4, 2012, which turned out to be the last payment they submitted to Auto Gallery. On July 5, 2012, Auto Gallery repossessed the vehicle. The other relevant facts, undisputed and otherwise, are discussed below as necessary.

On July 31, 2012, Plaintiffs filed their Complaint. (Dkt. No. 1.) They assert ten claims for relief under the federal Truth in Lending Act ("TILA" or the "Act"), Articles 3 and 9 of the Uniform Commercial Code (as adopted in Nevada), the Federal Trade Commission's used motor

1  vehicle trade regulation rule, the Nevada statutes for "retail installment contracts," and "consumer
2  fraud," fraudulent misrepresentation, conversion, breach of contract, and declaratory judgment.
3        Plaintiffs have moved for summary judgment on eight claims, omitting the claims under
4  the FTC rule and for declaratory judgment. (Dkt. No. 17.) For the reasons set forth below, the
5  Court grants in part and denies in part the motion.
6
7  II.    ANALYSIS
8        A.    First Claim — Truth in Lending Act
9        The Act requires that "creditors" disclose certain information in consumer credit
10  transactions. 15 U.S.C. § 1638. In pertinent part, a "creditor" is defined as:
11        a person who both (1) *regularly extends* . . . consumer credit which is payable by
        agreement in more than four installments or for which the payment of a finance
12        charge may be required, and (2) is the person to whom the debt arising from the
        consumer credit transaction is initially payable on the face of indebtedness[.]"
13
14  *Id.* § 1602(g) (emphasis added). As relevant to auto lending, "[a] person regularly extends
15  consumer credit only if it extended credit . . . more than 25 times . . . in the preceding calendar
16  year." 12 C.F.R. § 226.2(a)(17)(v).
17        Whether a person "regularly extends" credit is a question of fact. *See Boncyk v.*
18  *Cavanaugh Motors*, 673 F.2d 256, 259 (9th Cir. 1981). Plaintiffs have put forth no evidence to
19  prove that Auto Gallery extended credit more than 25 times in the calendar year preceding their
20  August 18, 2011 contract with Auto Gallery. A genuine issue of material of fact remains as to
21  whether Auto Gallery is a "creditor" under the Act. Summary judgment is therefore denied on
22  this claim. FED. R. CIV. P. 56(a).
23
24
25
26
27
28

**B.    Second Claim — NRS Chapter 97, Retail Installment Sales of Goods and Services**

**1.    Mandatory Contract Form — NRS § 97.299, NAC § 97.120**

Before it was repealed in March 2012, NAC § 97.120[1] provided the mandatory contract form for vehicle sales transactions that were (i) governed by the provisions of NRS § 97.299; and (ii) used add-on interest.[2]  NRS § 97.299 provides:

> The Commissioner of Financial Institutions shall prescribe, by regulation, forms for the application for credit and contracts to be used in the sale of vehicles if:
>
>> (a) The sale involves the taking of a security interest to secure all or part of the purchase price of the vehicle;
>>
>> (b) The application for credit is made to or through the seller of the vehicle;
>>
>> (c) The seller is a dealer; and
>>
>> (d) The sale is not a commercial transaction.

There is no question that Auto Gallery took a security interest in the Vehicle and that the sale was not a commercial transaction. *See* NRS § 97.299(5)(a).  In relevant part, a "dealer" is "any person who . . . [f]or compensation, money or other thing of value sells . . . an interest in a vehicle subject to registration under this chapter[.]"  NRS § 482.080(1)(a).  Vehicles subject to registration are those that are intended to be operated upon any highway in the state of Nevada. NRS § 482.205.  There is no genuine dispute that Plaintiffs intended to drive the Vehicle on Nevada highways.  Auto Gallery is thus a "dealer."

Auto Gallery indirectly[3] contends that the contract form requirement was inapplicable because "Plaintiffs made no application for credit from Auto Gallery." (Dkt. No. 18 at 21.)  Auto Gallery asserts that Plaintiff Gomez submitted a credit application to Nationwide Nevada, which was rejected, and that "Auto Gallery did not request either a credit application or a credit check of the Plaintiffs . . . .  This was not a bank or third-party financed transaction—it was a "Buy Here; Pay Here" transaction.  (*Id.*)

---

[1] "NAC" refers to the Nevada Administrative Code.

[2] Plaintiffs mistakenly argue that Auto Gallery was required to use the standard form for vehicle sales using simple interest, found in NAC § 97.110.

[3] Auto Gallery makes this argument in response to the claim that it failed to provide a copy of the Sales Contract in Spanish.

1    Auto Gallery's argument fails because it construes "application for credit" too narrowly.

2    The Sales Contract includes a "finance charge" of $3,000. (Dkt. No. 17 at 32.) A "finance

3    charge" is "the cost of credit indicated in a dollar amount." NRS § 97.031. So, Auto Gallery

4    granted credit to Plaintiffs. The definition of "credit" supports this conclusion: "the right granted

5    by a seller to a buyer to defer payment of debt or to incur debt and defer its payment." NRS

6    § 97.026. Plaintiffs incurred debt under the Sales Contract (the cost of the Vehicle plus the

7    finance charge) and deferred payment over 15 months. Regardless of whether Plaintiffs formally

8    applied for credit—by submitting a document titled "credit application" or otherwise—or whether

9    Auto Gallery formally inquired into Plaintiffs' credit through a credit reporting agency, Auto

10   Gallery's decision to grant credit to Plaintiffs itself demonstrates that Plaintiffs applied for credit

11   to Auto Gallery. To hold otherwise would exalt form over substance.

12       Moreover, Auto Gallery's argument directly contradicts the declaration of Pejman Zahedi,

13   the owner of Auto Gallery. Zahedi avers that "[i]n conjunction with their proposed purchase of a

14   Nissan Xterra, on August 3, 2011, I had Ms. Gomez complete an 'Application for Secured Credit'

15   to Nationwide Nevada, attempting to finance $8,644.02." (Dkt. No. 18-1 ¶ 7.) Zahedi admits

16   that Plaintiff Gomez made an application for credit *through* Auto Gallery, which is sufficient

17   under NRS § 97.299(1)(b). Plaintiffs ultimately purchased that same Nissan Xterra only two

18   weeks after making the credit application. (*Id.* ¶¶ 11–12, 21.)

19       Thus, the contract form requirement of NRS § 97.299 applied. Auto Gallery is correct

20   that because it charged add-on interest rather than simple interest, the form mandated by NAC

21   § 97.110 was not required. But the next section of the then-current Nevada Administrative Code

22   mandated a contract form for vehicle sales applying add-on interest, a form which Auto Gallery

23   undisputedly failed to use. NAC § 97.120. Although Plaintiffs did not raise the failure to use the

24   NAC § 97.120 contract form in their motion for summary judgment (as they limited their

25   argument to NAC § 97.110), the Court may grant summary judgment "on grounds not raised by a

26   party" as long as the Court provides "notice and a reasonable time to respond." FED. R. CIV. P.

27   56(f)(2).

28

The Court gives Plaintiffs and Auto Gallery 30 days from the entry of this Order to respond to the Court's stated belief that NAC § 97.120 applied to the transaction. If Auto Gallery does not respond, summary judgment will be entered on this claim in Plaintiffs' favor. As a consequence, Auto Gallery would be

> barred from the recovery of any finance charge, official fees, or any charge for delinquency or collection under or in connection with the [Sales Contract] . . . ; but [Auto Gallery] . . . may nevertheless recover from [Plaintiffs] an amount equal to the cash price of the [Vehicle] and the cost to [Auto Gallery] . . . of any insurance included in the transaction.

NRS § 97.305.

### 2. Mandatory Contract Terms and Disclosures — NRS §§ 97.185, 97.225, 97.299

#### a. Aggregate Amount of Official Fees

Plaintiffs contend that Auto Gallery violated NRS § 97.185(1)(e) by "failing to include the aggregate amount of official fees in the written contract." (Dkt. No. 17 at 11.) NRS § 97.185(1)(e) mandates that retail installment contracts must contain "[t]he aggregate amount of official fees." Not only must these contracts contain this aggregate amount, but it must be disclosed within a particular sequence:

> The [retail installment] contract also must contain the following items, *which must be set forth substantially in the sequence appearing below*:
>
> (a) The cash sale price of each item of goods or services.
>
> (b) The amount of the buyer's down payment, identifying the amounts paid in money and allowed for goods traded in.
>
> (c) The difference between paragraphs (a) and (b).
>
> (d) The aggregate amount, if any, included for insurance, specifying the type or types of insurance and the terms of coverage.
>
> (e) *The aggregate amount of official fees.*
>
> (f) The amount financed, which is the sum of paragraphs (c), (d) and (e).
>
> (g) The amount of the finance charge.
>
> (h) The amount of the total of payments owed by the buyer to the seller, which is the sum of paragraphs (f) and (g).
>
> (i) The number of installments required to pay the total of payments, the amount of each installment, and the date for payment of the installments. If the final payment

1    substantially exceeds the other scheduled installments, it must be set forth
     separately.

2    NRS § 97.185(1) (emphasis added).

3         A "retail installment contract" is a "contract, other than a retail charge agreement or an

4    instrument reflecting a sale made pursuant thereto, entered into or performed in [Nevada] for a

5    retail installment transaction." NRS § 97.105(1).  In turn, a "retail installment transaction" is "a

6    transaction in which a retail buyer purchases goods or services from a retail seller pursuant to a

7    retail installment contract or a retail charge agreement which may provide for a finance charge

8    and under which the buyer agrees to pay the total of payments in one or more installments."  NRS

9    § 97.115.  Although these two definitions seem somewhat circular, the Vehicle purchase

10   transaction was a "retail installment transaction" and the Sales Contract is a "retail installment

11   contract."  Thus, the Sales Contract was required to contain "[t]he aggregate amount of official

12   fees" in substantially the same sequence set forth in NRS § 97.185.  "Official fees" are "fees

13   prescribed by law for perfecting, transferring or releasing a security instrument created by a retail

14   installment transaction."  NRS § 97.055.

15        Auto Gallery argues that the Sales Contract complies because "the aggregate fee for the

16   loan is clearly and conspicuously indicated as $3,000.00."  (Dkt. No. 18 at 22.)  This argument

17   incorrectly presumes that the single aggregate fee suffices to disclose the aggregate amount of

18   "official fees."  Confusingly, what Auto Gallery calls the "aggregate fee" in its response brief is

19   labeled as the "finance charge" in the Sales Contract.  A close examination of the Sales Contract

20   is necessary.

21        The Sales Contract substantially complies with the sequence mandated by NRS

22   § 97.185(1), except that the official fees are nowhere to be found.  The cash sale price of the

23   Vehicle is listed near the top: $7,771.30.  Plaintiffs' down payment is next: zero.  The unpaid

24   balance—the difference between the sale price and the down payment—follows.  The insurance

25   amount is next, as it should be.  The Sales Contract then skips to the amount financed, the amount

26   of the finance charge, and the number of installment payments.  The "official fees" should be

27   between or near the insurance amount and the amount financed, but the "official fees" are not

28   listed at all.  The Sales Contract does not even have a text field or box for "official fees."

1  The applicable statutes define "finance charge" differently than "official fees." NRS
2  §§ 97.031, 97.055. If the Nevada Legislature thought that official fees could be subsumed in the
3  finance charge, the terms would not be defined differently and the list of required items in retail
4  installment contracts would not distinguish between official fees and the finance charge. *See*
5  *S.E.C. v. McCarthy*, 322 F.3d 650, 656 (9th Cir. 2003) ("It is a well-established canon of statutory
6  interpretation that the use of different words or terms within a statute demonstrates that Congress
7  intended to convey a different meaning for those words."). More, the Contract does not specify
8  whether Plaintiffs would incur any cost for the transfer, perfection, or release of the security
9  interest created in the sales transaction, whether labeled as "official fees" or otherwise. Auto
10 Gallery failed to comply in both form and substance.

11      As a matter of law, Auto Gallery violated NRS § 97.185(1)(e) by failing to include "[t]he
12 aggregate amount of official fees" in the Sales Contract.

13                          **b.      Unearned Portion of Finance Charge**

14      Plaintiffs next contend that Auto Gallery violated NRS § 97.299(2)(d) by "failing to
15 include in the [Sales Contract] a description of the method for calculating the unearned portion of
16 the finance charge upon prepayment in full of the unpaid total of payments as prescribed in NRS
17 97.2[2]5." (Dkt. No. 17 at 11.) Auto Gallery counters that the clause titled "Prepayment of
18 Amounts Owed" on page 2 of the Sales Contract provided the required information. (Dkt. No. 18
19 at 22.)

20      Despite Auto Gallery's argument, the Court will only consider the copy of the Sales
21 Contract submitted by Plaintiffs. Trejo de Zamora's declaration authenticates Plaintiffs' copy of
22 the Sales Contract. (Dkt. No. 23 ¶ 7.) On the contrary, Auto Gallery's purported copy of the
23 Sales Contract is not authenticated; Zahedi declares that he executed a purchase agreement with
24 Plaintiffs but he makes no reference at all to the purported copy of that agreement which Auto
25 Gallery submitted to this Court. *See Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir.
26 2002) ("A trial court can only consider admissible evidence in ruling on a motion for summary
27 judgment. . . . Authentication is a 'condition precedent to admissibility,' and this condition is
28 satisfied by 'evidence sufficient to support a finding that the matter in question is what its

1   proponent claims.'" (quoting FED. R. EVID. 901(a))).  The practical effect is that the Court will

2   not consider what Auto Gallery contends is the second page of the Sales Contract.[4]

3        The one-page Sales Contract contains a minimal description of how the unearned portion

4   of the finance charge would be calculated upon Plaintiffs' early payment of the entire outstanding

5   balance:

6        PREPAYMENT: In the event of prepayment in full, Purchaser is entitled to a
         partial refund of the unearned finance charge computed on the rule of 78.
7

8   (Dkt. No. 17 at 32.)  NRS § 97.299(2)(d) requires that the description comport with NRS

9   § 97.225, which in turn mandates that the "amount of the refund must be computed by applying

10  the agreed rate of the finance charge to the unpaid total of payments."  The Sales Contract's

11  unexplained reference to the "rule of 78" is woefully insufficient.

12       Even if the Court considered the purported second page of the Sales Contract, the result

13  would be the same.  The relevant clause provides:

14       PREPAYMENT OF AMOUNTS OWED: You may prepay all amounts due under
         this contract at any time.  In addition, if you fail to make any payment when due or
15       perform any other agreement provided for in this contract, we may, in addition to
         other remedies declare all sums immediately due and payable subject to any right
16       to reinstatement as required by law.  In either event, any FINANCE CHARGE
         owed less amount needed to bring the FINANCE CHARGE to a minimum of
17       $25.00 will be credited or refunded to you.  No refund of less than $1.00 will be
         made.
18

19  (Dkt. No. 18-8 at 3.)  Despite Auto Gallery's vehement argument to the contrary, this clause

20  provides no explanation whatsoever of the method of calculating the unearned portion of the

21  finance charge, whether in compliance with NRS § 97.225 or otherwise.

22       As a matter of law, Auto Gallery violated NRS § 97.299(2)(d).

23       Summary judgment is granted in Plaintiffs' favor on this claim for Auto Gallery's

24  violation of two statutes—NRS §§ 97.185(1)(e) and 97.299(2)(d).  Accordingly, Auto Gallery's

25  recovery is limited to "an amount equal to the cash price of the goods and services[.]"  NRS

26  § 97.305.  Auto Gallery may not recover "any finance charge, fees, or any charge for delinquency

27

28       [4] Moreover, the purported page 2 is not signed or initialed by Plaintiffs.

1   or collection under or in connection with the [Sales Contract]." *Id.* Thus, Auto Gallery's

2   entitlement under the contract is limited to the sale price of the Vehicle ($7,189) plus sales tax of

3   8.1%, for a total of $7,771.30.

4       Auto Gallery also seemingly violated the then-applicable version of NAC § 97.120, but

5   Auto Gallery may respond to this assertion under Rule 56(f)(2).  If Auto Gallery did violate NAC

6   § 97.120, the recovery limitations under NRS § 97.305 would be supported by another statutory

7   violation.

8       **C.    Third Claim — NRS Chapter 97 and NRS § 482.3277: Provision of Sales-
9       Related Forms in Spanish**

10      Plaintiffs contend the sale was done in Spanish with a sales assistant at Auto Gallery, that

11  they requested a copy of the Sales Contract in Spanish, and that Auto Gallery did not comply with

12  their request.  (Dkt. No. 17 at 13.)  Thus, they argue, Auto Gallery violated NRS § 482.3277.

13  Auto Gallery responds that none of its employees speaks Spanish and that Plaintiff Gomez

14  translated between English and Spanish during the sale transaction.  (Dkt. No. 18 at 22–24.)

15      In relevant part, NRS § 482.3277 provides:

16      Each vehicle dealer . . . *who conducts business by communicating in Spanish* with
        a purchaser or prospective purchaser regarding the potential purchase of a motor
17      vehicle shall, *upon the request* of a purchaser or prospective purchaser of a motor
        vehicle with whom the vehicle dealer or the dealer's agent is communicating or
18      has communicated in Spanish as a part of the preliminary discussions and
        negotiations regarding the purchase or potential purchase of the vehicle, allow the
19      purchaser or prospective purchaser to view the version of the forms for the
        application for credit and contracts to be used in the sale of vehicles which have
20      been translated into Spanish pursuant to subsection 3 of NRS 97.299.

21  Both Plaintiffs aver in declarations that they spoke Spanish with an Auto Gallery sales assistant.

22  (Dkt. No. 17 at 24, 28.)  But Zahedi states in his declaration that Auto Gallery does not employ

23  any Spanish speakers and that Plaintiff Gomez translated the deal.  (Dkt. No. 18-1 at 2–3.)  Thus,

24  there is a genuine dispute of material fact as to whether Auto Gallery conducts business in

25  Spanish and whether any Auto Gallery employees spoke Spanish with Plaintiffs in relation to the

26  sales transaction.  Whether Auto Gallery was required to provide a Spanish translation of the

27  Sales Contract depends on the resolution of this factual question.  NRS § 482.3277.

28      The Court must deny summary judgment on this claim.  FED. R. CIV. P. 56(a).

1

### D.     Fourth Claim — Fraudulent Misrepresentation

2        Plaintiffs argue that Auto Gallery committed fraudulent misrepresentation by omission by

3 failing to provide the disclosures mandated by state and federal law.  (Dkt. No. 17 at 14–16.)

4 Among other alleged omissions, Plaintiffs contend Auto Gallery did not disclose the Annual

5 Percentage Rate ("APR") as required by TILA, and that they purchased the vehicle in justifiable

6 reliance on Auto Gallery's failure to disclose that the "true APR" was 52.662%.  In other words,

7 Plaintiffs assert they would not have purchased the Vehicle had the "true APR" been disclosed.

8        Under Nevada law, a plaintiff must prove four elements for fraudulent misrepresentation:

9        (1) A false representation made by the defendant;

10        (2) defendant's knowledge or belief that its representation was false or that
defendant has an insufficient basis of information for making the representation;

11

12        (3) defendant intended to induce plaintiff to act or refrain from acting upon the
misrepresentation; and

13        (4) damage to the plaintiff as a result of [justifiably] relying on the
misrepresentation.

14

15 *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998); *Collins v. Burns*, 741 P.2d 819,

16 821 (Nev. 1987).

17        Regarding the first element, "the suppression or omission of a material fact which a party

18 is bound in good faith to disclose is equivalent to a false representation, since it constitutes an

19 indirect representation that such fact does not exist." *Nelson v. Heer*, 163 P.3d 420, 426 (Nev.

20 2007).  This principle readily extends to an omission in the face of a statutory duty to disclose.

21 *See Binette v. Dyer Library Ass'n*, 688 A.2d 898, 903 (Me. 1996); *McRae v. Bolstad*, 676 P.2d

22 496, 500 (Wash. 1984) (en banc).  Put another way, the failure to comply with a disclosure statute

23 or disclosure regulation constitutes the first element of fraudulent misrepresentation.

24        Although Plaintiffs contend each statutory disclosure violation constitutes a false

25 representation, which is correct, they argue justifiable reliance only in relation to Auto Gallery's

26 failure to provide the APR in conformance with TILA.  (*See* Dkt. No. 17 at 14–16.)  Plaintiffs

27 declare they relied on the Sales Contract and would not have bought the vehicle had the APR

28 been disclosed.  (Dkt. No. 17 at 24, 28.)  Auto Gallery submits no evidence to the contrary.  Auto

1   Gallery merely argues that it could not have disclosed "a non-existent annual percentage rate" and

2   that the alleged 52.662% APR is "manifestly wrong" because the $3,000 finance charge incudes

3   "various fees associated with a used vehicle transaction." (Dkt. No. 18 at 24.)

4       Auto Gallery is wrong on the law.  TILA mandates that creditors clearly and

5   conspicuously disclose the "annual percentage rate" and "finance charge."  15 U.S.C. § 1632(a).

6   The finance charge is the "sum of all charges . . . incident to the extension of credit."  *Id.*

7   § 1605(a).  The APR for closed-end credit, such as an auto loan, is defined as:

8       (A) that nominal annual percentage rate which will yield a sum equal to the
        amount of the finance charge when it is applied to the unpaid balances of the
9       amount financed, calculated according to the actuarial method of allocating
        payments made on a debt between the amount financed and the amount of the
10      finance charge, pursuant to which a payment is applied first to the accumulated
        finance charge and the balance is applied to the unpaid amount financed; or
11

12      (B) the rate determined by any method prescribed by the Bureau as a method
        which materially simplifies computation while retaining reasonable accuracy as
13      compared with the rate determined under subparagraph (A).

14  *Id.* § 1606(a)(1).  Even if the use of add-on interest makes a calculation under § 1606(a)(1)(A)

15  difficult or impossible, the creditor must still express the add-on rate as an APR under the

16  "reasonable accuracy" method of § 1606(a)(1)(B).  *See Smith v. Anderson*, 801 F.2d 661, 664 (4th

17  Cir. 1986) (explaining a Virginia statute which required the cost of consumer credit expressed in

18  terms of an APR and not solely as an add-on rate); *In re Pokrzywinski*, 311 B.R. 846, 849–50

19  (Bankr. E.D. Wis. 2004) (explaining that add-on rates can be translated into annual percentage

20  rates); *In re McMichen*, 23 B.R. 497, 497–98 (Bankr. N.D. Ga. 1982) (same).

21      However, Plaintiffs have not yet established that Auto Gallery is a "creditor" for purposes

22  of TILA and thus Auto Gallery's misunderstanding of the law is of no moment.  The factual

23  question of Auto Gallery's "creditor" status also precludes summary judgment in Plaintiffs' favor

24  on this claim.  Unless Auto Gallery is subject to TILA as a "creditor," Auto Gallery had no duty

25  to disclose the APR.  Auto Gallery's violations of Nevada disclosure statutes constitute

26  misrepresentations, but there is no evidence, let alone argument, that Auto Gallery intended for

27  Plaintiffs to rely on those omissions or that Plaintiffs justifiably relied on them.

28      Summary judgment is denied on this claim.

### E.   Sixth Claim — NRS Chapter 598, Deceptive Trade Practices

Plaintiffs contend Auto Gallery committed consumer fraud by engaging in deceptive trade practices—specifically, by failing to disclose a material fact (the APR) and by violating state and federal disclosure statutes. (Dkt. No. 17 at 16–17.) Auto Gallery responds with the same argument: that it could not have disclosed an APR in a transaction using add-on interest. (Dkt. No. 18 at 24–25.)

NRS § 41.600(1) creates a private right of action for "any person who is a victim of consumer fraud." In turn, NRS § 41.600(2)(e) defines "consumer fraud" in part as "[a] deceptive trade practice as defined in NRS 598.0915 to 598.0925, inclusive[.]" NRS § 598.0923 provides two relevant definitions of a deceptive trade practice: "knowingly . . . fail[ing] to disclose a material fact in connection with the sale . . . of goods" and "knowingly . . . violat[ing] a state or federal statute or regulation relating to the sale . . . of goods[.]" Plaintiffs argue under both definitions.[5] The available remedies for consumer fraud are damages, "any equitable relief that the court deems appropriate," and costs and reasonable attorney's fees. NRS § 41.600(3).

Neither the deceptive trade practice statute nor the applicable regulations defines "material fact." *See* NRS §§ 598.023–598.9694; NAC §§ 598.100–598.174. For purposes of Rule 56, a fact is material if it may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For purposes of deceptive trade practices, a fact is material if it may affect the outcome of the sales transaction. Unlike the summary judgment standard, however, whether a fact is material for purposes of disclosure is a question of fact. Materiality under the Rule 56 summary judgment standard is a question of law because, in this context, the outcome of the case turns on the legal elements of a claim. *Anderson*, 477 U.S. at 248 ("As to materiality, the substantive law will identify which facts are material."). For purposes of deceptive trade practices, materiality is a question of fact because the outcome of the sales transaction turns on

---

[5] Plaintiffs identified another definition of "deceptive trade practice": "[k]nowingly mak[ing] any other false representation in a transaction." NRS § 598.0915(15). It is unclear, however, to which "other false representation" Plaintiffs refer. The Court treats the Sales Contract's omission of the APR as properly argued under NRS § 598.0923(2).

1   the buyer's response to the disclosure or the omission of the fact at issue. Only a jury can
2   determine how a buyer would respond in a particular situation. The essential question is whether
3   the reasonable buyer's decision to buy or not to buy would change if the fact at issue were
4   disclosed.

5       Genuine disputes of material fact remain as to whether the APR was a material fact and
6   whether Auto Gallery knowingly omitted the APR from the Sales Contract. Summary judgment
7   is denied on the claim that Auto Gallery engaged in consumer fraud by committing a deceptive
8   trade practice under NRS § 598.0923(2).

9       However, Auto Gallery's violations of Nevada statutes governing auto sales constitute
10   deceptive trade practices under NRS § 598.0923(3). As set forth above, Auto Gallery violated
11   NRS §§ 97.185(1)(e) and 97.299(2)(d). Auto Gallery thus committed consumer fraud in violation
12   of NRS § 41.600(2)(e). Accordingly, the Court must award to Plaintiffs damages, any equitable
13   relief the Court deems appropriate, and costs and reasonable attorney's fees. NRS § 41.600(3).

14       Plaintiffs correctly argue, with supporting evidence, that the damages are at least $8,200.
15   Presently, Plaintiffs are out $8,200 and without the Vehicle. The precise amount of damages
16   shall be determined at trial. Plaintiffs do not request equitable relief on this claim, and the Court
17   deems none necessary. Costs and attorney's fees shall be determined at trial.

18   **F.**   **Seventh Claim — Conversion**

19       Plaintiffs claim that Auto Gallery committed the tort of conversion—the "distinct act of
20   dominion wrongfully exerted over personal property in denial of, or inconsistent with, title or
21   rights therein or derogation, exclusion or defiance of such rights." *Edwards v. Emperor's Garden*
22   *Rest.*, 130 P.3d 1280, 1287 (Nev. 2006). Put more simply, "[c]onversion exists where one exerts
23   wrongful dominion over another's personal property or wrongful interference with the owner's
24   dominion." *Larson v. B.R. Enter., Inc.*, 757 P.2d 354, 356 (Nev. 1988) (internal quotation marks
25   and citation omitted). The repossession of an automobile amounts to conversion unless the
26   repossession was legally privileged. *English v. Ralph Williams Ford*, 17 Cal. Rptr. 501, 505 (Cal.
27   Ct. App. 1971); *Sherwood v. Bellevue Dodge*, 669 P.2d 1258, 1262 (Wash. Ct. App. 1983). One
28   example of that privilege is the right to repossess as enshrined in an automobile sales agreement.

1   *Nev. Nat'l Bank v. Huff*, 582 P.2d 364, 369 (Nev. 1978) ("Clearly there is nothing unconscionable

2   in a contract clause authorizing the repossession of a chattel upon default."). The relevant

3   questions here are whether the Sales Agreement contained a valid repossession clause and

4   whether Plaintiffs were in default on July 5, 2012—the date Auto Gallery repossessed the

5   Vehicle.

6      The first question is easy to resolve. Page one of the Sales Agreement states:

7      DEFAULT AND ACCELERATION: If Purchaser defaults in the performance of
8      his obligations hereunder, Seller at his option may accelerate the payment of the
       unpaid balance, and (1) sue for such balance, or (2) repossess said property [the
9      Vehicle].

10  (Dkt. No. 17 at 32.) Under *Huff*, this clause is valid and gave Auto Gallery the right to repossess

11  the Vehicle if Plaintiffs defaulted. 582 P.3d at 369.

12     The second question—whether Plaintiffs defaulted—is a simple math equation. As set

13  forth above, the maximum amount that Auto Gallery can recover under the Sales Contract is

14  $7,771.30. This is because NRS § 97.305 prohibits the "recovery of any finance charge, official

15  fees, or any charge for delinquency or collection" if a seller violates any provision of the statutes

16  governing retail installment sales of goods, NRS Chapter 97. As set forth above, Auto Gallery

17  violated the statute, so it is limited to recovery of $7,771.30, which is the cash value of the

18  vehicle plus sales tax. *See* NRS § 97.305. It is undisputed that Plaintiffs had paid $8,200 to Auto

19  Gallery as of February 15, 2012. Therefore, Plaintiffs could not have been in default on July 5,

20  2012, the date of the repossession. In the absence of Plaintiffs' default, Auto Gallery was not

21  privileged to repossess the vehicle, and the repossession thus constituted conversion. *See English*

22  *v. Ralph*, 17 Cal. Rptr. at 505. Summary judgment is granted in Plaintiffs' favor on this claim.

23     **G.    Eighth Claim — NRS Chapter 104, Uniform Commercial Code**

24     Plaintiffs contend Auto Gallery violated NRS § 104.1304—the UCC's "obligation of

25  good faith"—by (i) failing to adhere to TILA regulations; (ii) repossessing the Vehicle when they

26  were not in default of the Sales Contract, and (iii) failing to observe reasonable commercial

27  standards of fair dealing by not complying with the statutory pre-disposition notification

28  requirements.

1       "Every contract or duty within the Uniform Commercial Code imposes an obligation of

2   good faith in its performance and enforcement." NRS § 104.1304. "Good faith . . . means

3   honesty in fact and the observance of reasonable commercial standards of fair dealing." NRS

4   § 104.1201(t).

5       If Plaintiffs can prove that Auto Gallery violated TILA, and that violation qualifies as

6   "bad faith," that would constitute a violation of NRS § 104.1304. However, as noted above

7   concerning the TILA regulations, there is a genuine issue of material fact as to whether Auto

8   Gallery qualifies as a "creditor" that could violate TILA. Accordingly, summary judgment

9   cannot be granted on that ground.

10       Article 9 of the UCC, as adopted in Nevada, imposes various requirements on a secured

11   party who seeks to repossess collateral after a debtor's breach. "After default, a secured party

12   may sell, lease, license or otherwise dispose of any or all of the collateral in its present condition

13   or following any commercially reasonable preparation or processing." NRS § 104.9610(1).

14   Notably, "[e]very aspect of a disposition of collateral, including the method, manner, time, place

15   and other terms, *must be commercially reasonable*." NRS § 104.9610(2) (emphasis added).

16       "A secured party that disposes of collateral under NRS 104.9610 shall send to [the debtor]

17   a reasonable authenticated notification of disposition." NRS § 104.9611(2). Among other things,

18   the notification *must* include: (i) the method of intended disposition; (ii) a statement "that the

19   debtor is entitled to an accounting of the unpaid indebtedness"; and (iii) "the time and place of a

20   public disposition or the time after which any other disposition is to be made." NRS §§

21   104.9613(1); 104.9614(1)(a). The statute even provides a standard form which complies with the

22   notice requirements. NRS § 104.9613(3).

23       Importantly, the notification need not state that debtors have the right to redeem collateral,

24   a right provided under NRS § 104.9623. Although Plaintiffs are correct that the standard form

25   informs debtors that they can redeem collateral, that information is not statutorily required. *See*

26   NRS § 104.9614(1). Plaintiffs err in arguing that NRS § 104.9623(3)(b) mandates disclosure of

27   the right of redemption. NRS § 104.9623(3)(b) merely governs the timing of a redemption: "[a]

28

1    redemption may occur at any time before a secured party . . . [h]as disposed of collateral or

2    entered into a contract for its disposition under NRS 104.9610[.]"

3         There are genuine questions of material fact as to whether Auto Gallery sent a notification

4    of disposition to Plaintiffs and whether the content therein complied with NRS § 104.9614(1).

5    Although evidence of the absence of an event is quite difficult, if not impossible, to obtain,

6    Plaintiffs do not even aver in their affidavits that they did not receive notice. (*See* Dkt. No. 17 at

7    23–30.) To the contrary, Zahedi declares that "[t]hrough [his] attorney, [he] warned Plaintiffs

8    what would happen if they refused to pay the defaulted debt." (Dkt. No. 18-1 at 6.) Regardless

9    of the imprecision of Zahedi's statement, Plaintiffs have not carried their burden as the moving

10   party.

11        Summary judgment is denied on this claim.

12        **H.     Ninth Claim — Breach of Contract**

13        Plaintiffs argue that Auto Gallery breached the contract by repossessing the vehicle

14   without giving notice that it demanded strict compliance of payment due dates, after having

15   accepted many late payments without complaint. (Dkt. No. 17 at 20.) The Court need not address

16   this claim as framed by the parties, however. Auto Gallery breached the contract by repossessing

17   the car when Plaintiffs were not in default. (*See id.* at 32.) To the extent Auto Gallery argues that

18   Plaintiffs accumulated late fees in an amount greater than Plaintiffs' $468.70 overpayment

19   ($8,200 minus $7,771.30), that argument fails because NRS § 97.305 precludes the collection of

20   "any charge for delinquency" by Auto Gallery, and possibly also because Auto Gallery may have

21   waived its right to collect late fees by accepting arguably late payments without imposing a late

22   fee. Summary judgment is granted on this claim in Plaintiffs' favor.

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

III.     **CONCLUSION**

In accord with the above, the Court hereby ORDERS:

1. Summary judgment is DENIED on the First Claim for Relief, for TILA violations.

2. Summary judgment is GRANTED IN PLAINTIFFS' FAVOR on the Second Claim for Relief, for Auto Gallery's violation of NRS §§ 97.185(1)(e) and 97.299(2)(d).

    Auto Gallery seemingly violated the then-applicable version of NAC § 97.120, but Auto Gallery may respond under Rule 56(f)(2).  If Auto Gallery does not respond within 30 days of the entry of this Order, summary judgment also will be entered against Auto Gallery on the ground that it violated NAC § 97.120.

3. Summary judgment is DENIED on the Third Claim for Relief, regarding the provision of sales-related forms in Spanish.

4. Summary judgment is DENIED on the Fourth Claim for Relief, for fraudulent misrepresentation.

5. Summary judgment is GRANTED IN PLAINTIFFS' FAVOR on the Sixth Claim for Relief, for consumer fraud by means of a deceptive trade practice under NRS §§ 41.600(2)(e), 598.0923(3).

6. Summary judgment is GRANTED IN PLAINTIFFS' FAVOR on the Seventh Claim for Relief, for conversion.

7. Summary judgment is DENIED on the Eighth Claim for Relief, for violations of the UCC's obligation of good faith and reasonable commercial standards of fair dealing.

8. Summary judgment is GRANTED IN PLAINTIFFS' FAVOR on the Ninth Claim for Relief, for breach of contract.

9. The parties shall submit briefs addressing the appropriate remedies, including costs and attorney's fees, for the claims granted in Plaintiffs' favor.  The briefs shall address whether the remedies may be determined on the briefs or whether they must be determined at trial.  The briefs shall be submitted within 30 days of the entry of this Order.


        DATED this 28th day of April, 2014.


                                        ANDREW P. GORDON
                                        UNITED STATES DISTRICT JUDGE